# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

## No. 25-30193

---

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

---

## IN RE: ROMAN CATHOLIC CHURCH
## OF THE ARCHDIOCESE OF NEW ORLEANS

---

## CIVIL APPEALS FROM ORDERS
## OF THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA
## CASE NO. 20-10846/23-1018, SECT. "A"
## HON. MEREDITH S. GRABILL, BANKRUPTCY JUDGE and
## HON. BARRY W. ASHE, DISTRICT JUDGE
## CASES NO. 23-2053 and 24-1873, SECT. "M"

---

## RICHARD TRAHANT and AMY O. TRAHANT

## V.

## MARK A. MINTZ, JONES WALKER, LLP, and
## DONLIN RECANO & COMPANY, INC.

---

## APPELLANTS' PRINCIPAL BRIEF

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

**_/S/ Jack E. Truitt_**
JACK E. TRUITT, BAR NO. 18476, T.A.
MICHELLE MAYNE DAVIS, BAR NO. 23027
KAYLIN K. STOREY, BAR NO. 39721
LOU ANNE MILLIMAN, BAR NO. 23869
1321 Ochsner Boulevard, Suite 200
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com

*Attorneys for Appellants*
*Richard C. Trahant and*
*Amy O. Trahant*

i

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**No. 25-30193**

———————————

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA**

———————————

**IN RE: ROMAN CATHOLIC CHURCH
OF THE ARCHDIOCESE OF NEW ORLEANS**

———————————

**RICHARD TRAHANT and AMY O. TRAHANT**

**V.**

**MARK A. MINTZ, JONES WALKER, LLP, and
DONLIN RECANO & COMPANY, INC.**

———————————

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>

The undersigned counsel of record certifies that these listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this court may evaluate possible disqualification or recusal.

Richard C. Trahant and Amy O. Trahant, Appellants

Mark A. Mintz, Appellee

Jones Walker, LLP, Appellee

Donlin-Recano and Company, Appellee

Jack E. Truitt, Michelle Mayne Davis, Kaylin K. Storey, and Lou Anne Milliman
Counsel for Appellants

Richard C. Stanley, Kathryn W. Munson, and Brandon A. Naquin
Counsel for Appellees

**THE TRUITT LAW FIRM**
A Limited Liability Company

*/S/ Jack E. Truitt*
JACK E. TRUITT, BAR NO. 18476, T.A.
MICHELLE MAYNE DAVIS, BAR NO. 23027
KAYLIN K. STOREY, BAR NO. 39721
LOU ANNE MILLIMAN, BAR NO. 23869
1321 Ochsner Boulevard, Suite 200
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com

*Attorneys for Appellants*
*Richard C. Trahant and*
*Amy O. Trahant*

## **STATEMENT REGARDING ORAL ARGUMENT**

Appellants respectfully suggest oral argument would assist the Court to understand the complicated procedural history, address pivotal issues arising out of the appellate record and briefs, correct numerous factual misstatements, and would substantially aid the decisional process; and they request oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .........................................................ii

STATEMENT REGARDING ORAL ARGUMENT .............................................iv

TABLE OF CONTENTS ....................................................................................v

TABLE OF AUTHORITIES ............................................................................vii

STATEMENT OF JURISDICTION ....................................................................1

STATEMENT OF THE ISSUES .........................................................................2

STATEMENT OF THE CASE ............................................................................2

SUMMARY OF THE ARGUMENT ...................................................................11

ARGUMENT ...................................................................................................12

    I.   The District Court committed reversible error by referring this case to the Bankruptcy Court for a decision on the merits without Appellants' consent……………………………………………………………………...12

   II.  The Bankruptcy Court abused its discretion and committed legal error by denying the Motion to Recuse. ................................................................19

     A.  The 28 U.S.C. § 144 Affidavit ...................................................20

     B.  The Content of Richard Trahant's Affidavit.................................22

     C.  The Contents of Amy Trahant's Declaration................................30

     D.  The Supporting Declarations of Other People .............................32

     E.  The prior recusal by Judge Darrel J. Papillion.............................35

  III. The District Court committed legal error by denying the Motion to Recuse……...........................................................................................39

  IV. The Bankruptcy Judge should have remanded this case to state court............40

     I.   The District Court Lacked Federal Subject Matter Jurisdiction .................41

II.  Mandatory Abstention Applies. ...................................................41

III. Permissive Abstention Applies. ..................................................43

V.  The Bankruptcy Court abused its discretion and erred as a matter of law in granting summary judgment. ...................................................48

A.  The Motion for Summary Judgment was premature ..................................51

B.  Defendants' "parties in interest" argument fails. .......................................54

C.  There are Disputed Issues of Material Fact as to Whether Defendants are Entitled to Quasi-Judicial Immunity. ..........................................................59

CONCLUSION ...............................................................64

CERTIFICATE OF COMPLIANCE ....................................................65

CERTIFICATE OF SERVICE ...........................................................66

# TABLE OF AUTHORITIES

CASES

*Adventure Outdoors Inc. v. Bloomberg*, 552 F.3d 1290, 1300 (11th Cir.2008)......47

*Andrade*, 338 F.3d at 455. Liteky, 510 U.S. at 554-55, 114 S.Ct. 1147 ................38

*Auffmordt v. Hedden*, 137 U.S. 310, 327, 11 S. Ct. 103, 108, 34 L. Ed. 674 (1890) ................................................................................................................60

*Baron v. Sherman* (In re Ondova Ltd. Co.), 914 F.3d 990, 993–94 (5th Cir. 2019) ................................................................................................................50

*Barton v. Barbour,* 104 U.S. 126 (1881) ................................................................18

*Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1025-26 (5th Cir. 1999) ..................15

*Benesmart, Inc. v. Total Financial Group, LLC,* 2012 WL 6020340, p. 3 (E.D. La. 2012) (Barbier, J.) (citing *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)) ............................................................41

*Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir.2007) (Easterbrook, J.) ...47

*Bryce v. Episcopal Church in the Diocese of Col.*, 289 F.3d 648, 659 (10th Cir. 2002) ................................................................................................37

*Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987) (citing 28 U.S.C. § 1441(a)) ....................................................41

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ................................................52

*Celotex Corp. v. Edwards,* 514 U.S. 300, 308 fn. 6, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995) ................................................................................43, 45

*CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.),* 363 B.R. 559, 565 (Bankr.N.D.Ill.2007) (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987) ............................46

*Clemmons v. Wolfe,* 377 F.3d 322, 325 (3d Cir.2004) ............................................39

*Collum v. City of Chi.*, 2023 WL 6127158, at \*2 (N.D. Ill. Sept. 19, 2023),..........14

*Denton County Elec. Coop. v. Eldorado Ranch, Ltd. (In re Denton County Elec. Coop.),* 281 B.R. 876, 881 (Bankr.N.D.Tex.2002) ................................................44

*Emery v. Medtronic, Inc.*, 793 F. App'x 293, 296 (5th Cir. 2019) ....................51, 52

*Empire Healthchoice,* 547 U.S. at 701, 126 S. Ct. 2121 .........................................47

*Feld v. Zale Corp., (Matter of Zale Corp.),* 62 F.3d 746, 752 (5th Cir.1995).........43

*G & H Dev., LLC v. Penwell,* 9 F. Supp. 3d 658, 668 (W.D. La. 2014) .................61

*George v. Go Frac, LLC,* No. SA-15-CV-943, 2016 WL 94146, at \*2 (W.D. Tex. Jan. 7, 2016) ......................................................................................................51, 52

*Gober v. Terra + Corp., (In re Gober),* 100 F.3d 1195, 1206 (5th Cir.1996) (citations omitted), as cited in *Barbee v. Colonial Healthcare Ctr., Inc.*, 2004 U.S. Dist. LEXIS 4868, 2004 WL 609394 (N.D. Tex. Mar. 22, 2004) ...............44

*Halper v. Halper,* 164 F.3d 830, 838-40 (3d Cir. 1999). ........................................13

*Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) .........................................38

*Howe v. Vaughan (In re Howe)*, 913 F.2d 1138, 1143 at fn. 6 (5th Cir.1990)........44

*In re Archdiocese of New Orleans Bankruptcy,* No. 20-10846 (E.D. La.) (Grabill, B.J.). ...........................................................................................................................3

*In re Forth Worth Osteopathic Hospital, Inc.*, 42 ALR F.2d 751, 406 B.R. 741, 745 (N.D. Tex. 2009). .........................................................................................12, 42

*In re Harris,* 590 F.3d 730, 742 (9th Cir. 2009)......................................................61

*In re Kensington Intern. Ltd.,* 368 F.3d 289, 301 (3d Cir. 2004) .....................11, 37

*In re McKenzie,* 716 F.3d 404, 415 (6th Cir. 2013) ...............................................61

*In re Ondova Ltd. Co.,* No. 09-34784-SGJ-7, 2017 WL 477776, at *14 (Bankr. N.D. Tex. Feb. 1, 2017), report and recommendation adopted, No. 09-34784-SGJ-7, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018), aff'd sub nom. *Matter of Ondova Ltd. Co.,* 914 F.3d 990 (5th Cir. 2019)..................................................61

*In re Testaverde,* 317 B.R. 51 (E.D of NY, 2004) (Hurley, J.) ...............................54

*In re Toppin,* 645 B.R. 773, 784 (E.D. Pa. 2020)....................................................60

*In Re Tower Park Properties, LLC,* 803 F.3d 450 (9th Cir. 2015) .........................55

*Insurance Exchange v. Kaiser Gypsum Co., Inc.,* 602 U.S. 268 (2024). ...............56

*Lewis v. Fed. Rsrv. Bank of Atlanta-New Orleans Branch,* No. CIV.A. 04-1452, 2004 WL 2035006, at *4 (E.D. La. Sept. 10, 2004) ...........................................52

*Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 n. 8, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) .....................................................................11, 37

*Liljeberg,* 108 S.Ct. at 2202, 100 L.Ed.2d at 859....................................................34

*Liteky v. United States,* 510 U.S. at 540, 554, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) .......................................................................................28, 29, 38

*Manguno,* 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995)) .............................................................................41

*Matter of Foster,* No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023)..............18

*Matter of Richardson,* 52 B.R. 527, 533 (Bkrtcy.W.D.Mo.1985)...........................15

*Melendres v. Arpaio*, No. 07-2513, 2015 WL 13173306 (Dist. of Ariz) ...............33

*Moore v. Idealease of Wilmington,* 358 B.R. 248, 252 (E.D.N.C. 2006)...............14

*Nickerson-Malpher v. Baldacci,* 522 F.Supp.2d 293, 296 (D. Me. 2007) .............38

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) .................................................................16

*Phongsavane v. Potter*, No. CIVASA05CA0219, 2005 WL 1514091, at *5 (W.D. Tex. June 24, 2005)...........................................................................52

*Pinkozie v. Ricks,* 243 F.Supp.3d 768, (E.D. La. 2017) .........................................16

*Prospect Capital Corp. v. Mut. of Omaha Bank,* 819 F.3d 754, 757 (5th Cir. 2016) ...................................................................................................51

*Sanders v. City of Br*ady (In re Brady, Tex., Mun. Gas Corp.), 936 F.2d 212, 218 (5th Cir.1991)..................................................................................45

*Sewell v. Sewerage & Water Bd. of New Orleans,* 697 F. App'x 288, 291 (5th Cir. 2017) .......................................................................................51

*Singh in Marren v. Stout*, 930 F. Supp.2d 675, 685 ...............................................47

*Singh v. Duane Morris, LLP,* 538 F.3d 334, 339 (5th Cir. 2008) ..........................46

*Street v. BP Exploration and Production Incorporated,* 85 F.4th 266,  273 (5th Cir. 2023). ......................................................................................19, 40

*Tejero v. Portfolio Recovery Assocs.*, 955 F.3d 453, 463 (5th Cir. 2020)..............38

*Troice v. Proskauer Rose, L.L.P.,* 816 F.3d 341, 349 (5th Cir. 2016) ...................50

*U.S. v. Garramone*, E.D. Pa. (1974), 374 F. Supp. 256 .........................................39

*U.S. v. Jordan,* 49 F. 3d 152, 156 (5th Cir. 1995)............................................33, 37

*United States v. Liggins*, 76 F.4th 500, (6th Cir. 2023)...........................................27

*Wade v. Brennan,* 647 F. App'x 412, 417 (5th Cir. 2016)........................................51

*Wellness International Network v. Sahrif,* 575 U.S. 665, 669, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015) ....................................................................................11, 16

*Whitfield v. Miss. Bureau of Narcotics,* No. 3:17CV987-HSO-JCG, 2019 WL 6534144, at *4 (S.D. Miss. Dec. 4, 2019).............................................................52

*Wood v. Wood (In re Wood),* 825 F.2d 90, 92, 93 (5th Cir.1987)....................43, 45

*Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203 (5th Cir. 2020) ......................................................................................................................51

<u>STATUTES</u>

11 U.S.C. § 326 .........................................................................................................58

11 U.S.C. § 1109 .......................................................................................................58

28 U.S.C. § 1334 .........................................................................................16, 44, 47, 48,

28 U.S.C.  455(a) and (b)(1)...............................................................29, 30, 34, 37

28 U.S.C. § 144 ....................................................................................................10, 21

28 U.S.C. § 157 ....................................................................1, 13, 14, 15, 16, 44

28 U.S.C. § 158(a) .......................................................................................................1

28 U.S.C. § 292(a),....................................................................................................42

28 U.S.C. § 47 ....................................................................................................41, 42

28 U.S.C. §636(c)......................................................................................................16

O<small>THER</small> A<small>UTHORITIES</small>

10A Charles Alan Write, Et. Al., Federal Practice and Procedure § 2717 (4th ed. 2020) ...............................................................................................54

215 B.R. 826, 831, 39 Collier Bankr.Cas.2d 559, 1998 Fed. App. 0003P..............42

Black's Law Dictionary 1122 (6th ed.1990) ...........................................................57

Cambridge Dictionary .............................................................................................26

Miriam-Webster Dictionary .....................................................................................26

R<small>ULES</small>

U.S. Bankruptcy Court for the Eastern District of Louisiana, Local Rule 83.4 et seq. ........................................................................................1, 9, 13, 18

U.S. Bankruptcy Court for the Eastern District of Louisiana, Chapter 11 Complex Case Procedures ......................................................................................62

Federal Rules of Appellate Procedure 4(a)(1)..........................................................1

Federal Rules of Bankruptcy Procedure 8001 et seq.................................................1

Federal Rules of Civil Procedure 56 ..............................................................54, 55

Federal Rule of Appellate Procedure 28.1(e)(2)(A)................................................69

Federal Rule of Appellate Procedure 32 et seq. .....................................................69

Federal Rule of Bankruptcy Procedure 2002 ...........................................60, 62, 66

Federal Rules of Bankruptcy Procedure 7008 and 2012(b) ...................................16

Federal Rules of Appellate Procedure 32.2 ............................................................69

U.S. Bankruptcy Court for the Eastern District of Louisiana, Local Rule 1007-2..
............................................................................................51, 52

Federal Rules of Appellate Procedure 28.2.1...........................................................ii

## **STATEMENT OF JURISDICTION**

The Bankruptcy Court erroneously exercised jurisdiction over this Chapter 11 bankruptcy proceeding under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and E.D. La. Bankr. L.R. 83.4.1.   Appellants objected to the Bankruptcy Court's exercise of jurisdiction over this matter since its inception.   A bankruptcy court has no jurisdiction to make a dispositive ruling in a tort case unless all parties consent, which never happened. This case is not a "core proceeding" under 28 U.S.C. § 157(b).

The District Court normally would have appellate jurisdiction of this appeal under 28 U.S.C. § 158(a), LR 83.4.2, and Fed. R. Bankr. p. 8001 *et seq.* because the Bankruptcy Court issued several erroneous orders, and Appellants timely filed a notice of appeal within 14 days of dismissal thereafter on July 25, 2024.[1]  ROA.6-9

This Court has appellate jurisdiction under 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(1) because the District Court's Opinion entered on March 5, 2025 disposed of appellants' appeal and therefore constitutes a final decision, and because appellants timely filed a notice of appeal within 30 days thereafter on April 1, 2025. ROA.532-564, 565-567.

---

[1] Appellants objected to the District Court sitting as a reviewing court as to *its own* Orders under 28 U.S.C. § 47 and filed a motion to disqualify the District Judge, ROA.223-230, which was denied at ROA.898-908.  Appellants appeal this ruling and point out that the District Judge should have been more sensitive to recusal matters relative to both himself and the bankruptcy judge.

1

## STATEMENT OF THE ISSUES

Appellants seek relief relative to five distinct issues.

1)     Whether the Bankruptcy Court made substantive rulings in a referred case without the consent of every party;

2)     Whether the Bankruptcy Judge's and the District Judge's denials of the motions to recuse abused their discretion;

3)     Whether the Bankruptcy Judge abused her discretion in denying the motion to remand when this case raises only state law claims, is not a "core proceeding", and neither the debtor nor trustee or parties;

4)     Whether the bankruptcy judge committed reversible error in granting summary judgment when there are genuine issues of material fact, a party has been denied basic discovery, and the primary reason for the decision appears nowhere in the record; and

5)     Whether a District Judge as a matter of law can preside as an appellate judge to decide the legality and appropriateness of his own earlier rulings.

## STATEMENT OF THE CASE

In its appellate decision, the District Court wrote:

*In response, the bankruptcy court ordered an independent investigation by the United States Trustee, who reported that Mr. Trahant **willfully** violated the protective order by disclosing confidential and protected discovery material to third parties.* (Emphasis added) ROA. 533.

This statement is flat wrong - - the United Stated Trustee never found that Mr. Trahant <u>willfully</u> violated the protective order. This has evolved into the false basis for a narrative that has served in several federal courts to vilify a thirty-two-year member of the bar with a previously unblemished record. Mr. Trahant never provided "material" to anyone.

Appellant Richard Trahant is an attorney who represents dozens of victims who are survivors of clergy sexual abuse within the bankruptcy filed by the Archdiocese of New Orleans entitled *In re Archdiocese of New Orleans Bankruptcy*, No. 20-10846 (E.D. La.) (Grabill, B.J.). ROA.1293-1297.[2] In May of 2020, shortly after the bankruptcy was filed, four of Mr. Trahant's and his co-counsel's clients were appointed to serve on the Unsecured Creditors' Committee. For two years, Mr. Trahant, his co-counsel, and their clients contributed significant time and effort to the functioning of the Committee, including the Committee's duty to investigate the Archdiocese.

Appellee, Mark A. Mintz, is the lead bankruptcy attorney for the Archdiocese of New Orleans. Mr. Mintz is a partner with the Jones Walker law firm. Jones Walker defended the state court lawsuits brought against the Archdiocese, and Jones

---

[2] Mr. Trahant already has been sanctioned a financially devastating $400,000 and lambasted by both the Bankruptcy Court and the same section of the District Court involved in this case before filing the lawsuit at issue. That sanction remains on appeal before this Court at # 23-30466.

Walker's bankruptcy section planned for, filed, and has litigated the bankruptcy since then.

Appellee, Donlin, Recano & Company, Inc. ("Donlin Recano"), is a bankruptcy administration company that serves national clients across a broad range of industries and business sectors. Working with counsel, turnaround advisors and the affected company, Donlin Recano helps organize and guide Chapter 11 clients through required bankruptcy tasks, including provision of creditor notification, website-accessible information, formation of professional call centers, management of claims, balloting, distribution and other administrative services. Donlin Recano is the "noticing agent" in the Archdiocese bankruptcy.

Beginning on December 31, 2021, Mr. Trahant learned of an issue regarding a priest at a local high school. ROA. 1293-1297. On January 20, 2022, the Archdiocese filed under seal in the bankruptcy a *Motion for Entry of an Order: (A) Compelling the Tort Committee and/or Its Counsel to Answer Identified Questions, and (B) Setting an Evidentiary Hearing on Sanctions for Violation of Protective Order* (the "Motion to Compel"). In the Motion to Compel, the Archdiocese alleged certain breaches of Protective Orders, whereby confidential information was disclosed to third parties and the media.

On April 14, 2022, after months of finger-pointing and allegations, the Archdiocese withdrew the motion, but Mr. Mintz suggested to the bankruptcy judge

that she instruct the United States Trustee to investigate the alleged Protective Order violation.  The bankruptcy judge did just that, giving the UST until June 3, 2022, to complete its investigation and submit a report.  The UST submitted its report.

Less than two business days later, on June 7, 2022, the Bankruptcy Court issued an Order finding that Mr. Trahant had violated the Protective Order, removed Mr. Trahant's clients from the Committee, and effectively barred him and his co-counsel from further participation with the Committee, (the "Trahant Order"). ROA.1293-1297.  The Order specifically found as a matter of fact that Mr. Trahant violated the Protective Order relying solely on the UST Report and supporting materials previously filed under seal and not accessible to Trahant before the order was issued.

For over three years now, Mr. Trahant has been unable to fully and publicly defend himself or tell what really happened, instead forced into arguing his innocence in an appeal in this court which is almost entirely under seal.[3]

On June 13, 2022, the Monday after the Order removing Mr. Trahant's clients from the Committee, the Court held a status conference to discuss certain issues including *how* the June 7, 2022, Order would be served. ROA.724-751. Ultimately,

---

[3] The Orders emanating from the US Trustee investigation differ from the UST's sealed report. And the actual depositions, Declarations, and attached exhibits establish facts far different from both the UST's report and the Orders that followed.

it was decided that the Committee lawyers would serve the abuse survivor constituency; no other instructions were given. ROA.745. The June 7, 2022 Order itself reads: "IT IS FURTHER ORDERED that counsel for the Debtor serve this Order via first-class U.S. Mail on those parties in interest who will not receive service via this Court's CM/ECF system and file a certificate of service within three days." ROA.1297(Emphasis added). These instructions said neither that the Order was to be served on "all parties in interest," nor the entire "creditor mailing matrix." At no point did the bankruptcy judge instruct the defendants to serve any individuals who were not "parties in interest," and specifically not the entire mailing matrix.

Mr. Mintz was present for the June 13, 2022 status conference, and an attorney for Donlin Recano named Lisa Terry was present telephonically. ROA.724-751. Mr. Mintz was present for the June 13, 2022 status conference, and an attorney for Donlin Recano named Lisa Terry was present telephonically. ROA.724-751. The transcript of the status conference confirmed these instructions. ROA.745. The service of this Order was supposed to be limited. Again, never, not at any point, was there an instruction to serve the entire mailing matrix.

During the week of June 20, 2022, Mr. Trahant and his wife began receiving telephone calls from friends who were disturbed by having received in the mail the Order finding Mr. Trahant guilty of wrongdoing. ROA.2316. Not a single one of

these people claims to be a creditor in the bankruptcy, none is a "party in interest" and would have no reason whatsoever to have received this Order. ROA.2316.

Ultimately, Mr. Trahant determined that Mr. Mintz and Donlin Recano caused the June 7, 2022, Order to be mailed to the "Master Creditor Mailing Matrix," over 16,000 people all over the world, most of whom have nothing to do with the Archdiocese bankruptcy.[4] ROA.1332-1925. The overwhelming content of his matrix is improperly redacted.

The first person to contact Mr. Trahant's wife was a friend whose eighteen-year-old daughter (sixteen years old when she was placed on this matrix) received the Order in Metairie, Louisiana. ROA.1332-1925. None of the individuals who contacted Mr. Trahant and his wife are identified on any mailing list, but Mr. Trahant is aware that at least a couple of them correspond to numbers described on the mailing list as "name and address intentionally omitted." ROA.1332-1925.

Also in the mailing matrix are the names of people whom Mr. Trahant knows, and who know him. ROA.1332-1925. Most, if not all of these people are **not** creditors in the bankruptcy, and they certainly are **not** "parties in interest." ROA.2309-2314.[5] Obviously, they would not have seen the June 7, 2022, Order, but

---

[4] The title of this document is a complete misnomer as there are many individuals on this matrix who are most certainly **not** creditors in this bankruptcy.

[5] Because these individuals have executed Declarations disputing that they have any interest whatsoever in the Archdiocese's bankruptcy, it is undisputed that they are not "parties in interest" because no countervailing evidence has been produced.

for it being improperly mailed to them. As of the filing of this brief, the Trahants have not seen a list identifying all recipients. ROA.2315-2318.

The Trahants filed a "Petition for Damages" against defendants in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana on June 2, 2023. ROA.595-604.  In the petition, the Trahants alleged only state law tort claims.

On June 14, 2023, defendants removed the action to the District Court allegedly based on federal jurisdiction based on the underlying acts by the defendants in the Bankruptcy Court. Appellees immediately moved for a reference to the Bankruptcy Court on July 12, 2023. Without a hearing or any input from Appellants, the District Court referred the matter to the Bankruptcy Court with an opinion on July 14, 2023. ROA.764-766.[6]

On July 3, 2023, Appellants had filed a Motion to Remand, in which they argued that there is simply no *necessary* connexity between a state court tort action and the bankruptcy proceedings.  The Motion to Remand was eventually denied by the Bankruptcy Court on November 30, 2023 - - <u>four months later</u>. ROA.54-69.[7]

---

[6] There was significant activity in two separate proceedings (Bankruptcy case No. 23-1018 and Louisiana Eastern District Court No. 23-2053).  Appellants are appealing rulings in both cases to this Court.

[7] A simple review of the Bankruptcy Court' docket sheet establishes how dragged out this entire process was. ROA.122-137. And although it took the Bankruptcy Court nearly a year to rule on the Motion for Summary Judgment (without a hearing or discovery), the District Court called this "due course." ROA.534-535

On July 13, 2023, Appellees filed a Request for Reference to Bankruptcy Judge Under Local Rule 83.4.1 and the General Order of Reference.  On July 14, 2023, the District Court referred this matter to the Bankruptcy Court under Local Rule 83.4.1. ROA.764-766. The District Court denied Appellants' request to withdraw the referral/reference. ROA.824-833.

On August 16, 2023, while the Motion to Remand was pending, and before Appellees had filed an Answer, before Initial Disclosures were exchanged, or any discovery had taken place, Appellees filed a Motion for Summary Judgment. ROA.2207-2290.

Mr. Trahant filed an affidavit of bias under 28 U.S.C. § 144.  This affidavit demonstrated ample bias and *animus* by the Bankruptcy Court against him.  The District Court ruled on this affidavit as a motion to recuse before the Bankruptcy Court did. ROA.17-22. The Bankruptcy Court eventually denied the motion to recuse. ROA.977-1007.

On July 16, 2024, <u>exactly eleven (11) months after the motion for summary judgment was filed</u> and without the benefit of oral argument, the Bankruptcy Court did what Appellants always were convinced it would do as stated in Mr. Trahant's

affidavit of bias ROA.834-842, it dismissed their case without a shred of discovery and after more than a year of delays. ROA.2444-2463.[8]

Appellants appeal these adverse orders:

1. The Order Dismissing Complaint. ROA.2444-2463.

2. The District Court's Order referring the case to Bankruptcy Court, ROA.764-766 and 824-833.

3. The Order denying the Trahants' Motion to Recuse signed by Judge Barry Ashe, ROA.17-22.

4. The Memorandum Opinion and Order denying the Trahants' Motion to Recuse Judge Meredith Grabill signed by Judge Meredith Grabill, ROA.977-1007.

5. The Memorandum Opinion and Order denying the Trahants' Motion to Remand, ROA.54-69.

6. The District Court's denial of Appellants' Motion to Disqualify District Judge under 28 U.S.C. § 47, ROA.898-908.

7. The District Court's Order affirming all of the Bankruptcy Court's rulings appealed herein, ROA.532-564.

---

[8] Likewise, on appeal to the District Court, Appellants were denied oral argument with no reason given.

## <u>SUMMARY OF THE ARGUMENT</u>

Never did Appellants consent to the Bankruptcy Court adjudicating this case, which clearly violates the United States Supreme Court's holding in *Wellness International Network v. Sahrif*, 575 U.S. 665, 669, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015). Quite simply, a bankruptcy court is not empowered to act as an Article III court without the consent of all parties. The *Barton* doctrine does not apply, nor does it give a bankruptcy court the unfettered authority of an Article III court, even if it applied. The Bankruptcy Court never had jurisdiction to do what it did here.

Whenever a judge's partiality might reasonably be questioned, recusal is required under § 455(a), irrespective whether the circumstance is covered by § 455(b). *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 n. 8, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The test to determine whether a judge should be recused is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). Many reasonable people have called the Bankruptcy Judge's impartiality into question.

This case should have been remanded, primarily because the issues raised are state law claims between non-debtors and do not fall within the jurisdictional grant respecting matters "arising in," or "arising under," or "core proceedings." *In re*

11

*Forth Worth Osteopathic Hospital, Inc*., 42 ALR F.2d 751, 406 B.R. 741, 745 (N.D. Tex. 2009).

Summary judgment was erroneously granted because Appellants were denied even basic discovery relative to a motion that remained pending for nearly a year. Even the primary reason for granting summary judgment is a fundamental factual error -- the service instructions on the June 7, 2022 Order are devoid of the phrase "entire Mailing Matrix." ROA.2456.   The Bankruptcy Court made the same erroneous statement during the June 13, 2022 status conference, for which there is a transcript. Repeating a factual error does not make it true.

## **ARGUMENT**

I.     **The District Court committed reversible error by referring this case to the Bankruptcy Court for a decision on the merits without Appellants' consent.**

The District Court had no authority to refer this case to the Bankruptcy Court for a decision and/or trial on the merits without Appellants' consent.  ROA.764-766.

Appellants objected to the referral of this matter to the Bankruptcy Court, and moved the District Court to reconsider its referral, which the District Court denied. ROA.767-779, 824-833.

The Bankruptcy Court cannot try or otherwise dispose of tort claims. The very local rule (Local Rules of the Eastern District of Louisiana, 83.4.1) that the District Court relied upon to refer this case to the Bankruptcy Court states:

**LR 83.4.1 Reference to Bankruptcy Judge**

All cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are transferred by the district court to the bankruptcy judges of this district. <u>As set forth in 28 U.S.C. 157(b)(5), personal injury tort and wrongful death claims must be tried in the district court.</u> (Emphasis added).

If a bankruptcy court is prohibited from trying a tort claim on the merits, then it is prohibited from disposing of a tort claim on the merits via summary judgment.

It was never properly established that this case constitutes a "core proceeding," and Appellants have disputed this from the outset. Even where a proceeding presents a mix of core and non-core claims, the bankruptcy court must perform a claim-by-claim analysis to determine the extent of its jurisdiction. *Halper v. Halper*, 164 F.3d 830, 838-40 (3d Cir. 1999).

Obviously, the Bankruptcy Court never conducted such a "claim-by-claim analysis."

28 U.S.C.A. § 157(b)(3) states:

The bankruptcy judge **shall** determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law. (Emphasis added).[9]

---

[9] On Appeal, the District Court undermined this requirement, writing that maybe it "appears" the Bankruptcy Court may have done it: "And while the bankruptcy court did not expressly say that it was evaluating Appellants' complaint claim-by-claim, it appears that it likely did so and, regardless, would have reached the same result had it done so." ROA.545.

There was never a motion by any party or the Bankruptcy Court to determine whether this case was a "core proceeding," the Bankruptcy Court simply stated this is a core proceeding.

28 U.S.C.A. § 157 establishes that a bankruptcy judge is not empowered to make substantive rulings in a case such as this one where all parties have not given consent.

> **(c)(1)** A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.[10]

In making a finding of bankruptcy court jurisdiction, however, "the higher courts (must) be circumscript in delegating powers to the bankruptcy court lest they by indirection confer Article III powers on the bankruptcy court (and) the bankruptcy court must be circumscript in interpreting the law delegating powers to it lest it be

---

[10] Had this rule been followed and the District Court made the final substantive rulings, this appeal would have gone directly to this Court. The District Court summarily dismisses this argument by citing *Collum v. City of Chi.*, 2023 WL 6127158, at *2 (N.D. Ill. Sept. 19, 2023), but omits this part: *But see Moore v. Idealease of Wilmington*, 358 B.R. 248, 252 (E.D.N.C. 2006) ("Although some courts construe section 157(b)(5)'s use of the term 'tried' to mean that a bankruptcy court may resolve pre-trial motions in such actions, this court believes that (absent consent) a district court should retain control over all aspects of personal injury tort claims under section 157.")(Emphasis added), ROA.544, FN 63.

accused of arrogating Article III powers to itself." *Matter of Richardson,* 52 B.R. 527, 533 (Bkrtcy.W.D.Mo.1985).

28 U.S.C. § 157 does not confer jurisdiction separate and apart from 28 U.S.C. § 1334. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1025-26 (5th Cir. 1999) (holding that § 1334 does not confer jurisdiction over action to enforce a non-dischargeable money judgment against a bankruptcy debtor, and thus, § 157 cannot confer jurisdiction independently).

This case is not a "core proceeding." The relevant section of federal law, 28 U.S. Code § 1334, does not define core and non-core proceedings. It does, however, give a non-exclusive list of 16 types of core proceedings. This case does not fit into **any** of those 16 types of proceedings.

Under revised Federal Rules of Bankruptcy Procedure (F.R.B.P. 7008 and 2012(b)), a party involved in an adversary proceeding makes the decision to give or withhold consent to having the bankruptcy judge decide non-core issues in the adversary proceeding.

Again, Appellants objected to the Bankruptcy Court making any rulings under 28 U.S.C. § 157 (Rec. Doc. 28). Section (c)(2) states:

> Notwithstanding the provisions of paragraph (1) of this subsection, the district court, **with the consent of all the parties to the proceeding**, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and

judgments, subject to review under section 158 of this title. (Emphasis added).[11]

This case is not "related to" the Archdiocese of New Orleans bankruptcy case.[12] But even if this case satisfied this Court's definition of "related to," Appellants would have needed to consent to the Bankruptcy Court entering orders and judgments.

The United States Supreme Court addressed the issue of consent on a bankruptcy referral in *Wellness International Network v. Sahrif*, 575 U.S. 665, 669, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015) as follows:

> Congress' efforts to align the responsibilities of non-Article III judges with the boundaries set by the Constitution have not always been successful. In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion), and more recently in *Stern,* this Court held that Congress violated Article III by authorizing bankruptcy judges to decide certain claims for which litigants are constitutionally entitled to an Article III adjudication. <u>This case presents the question whether Article III allows bankruptcy judges to adjudicate such claims with the parties' consent. We hold that Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge.</u> (Emphasis added).

---

[11] This requirement is analogous to 28 U.S.C. §636(c). A District Court cannot force parties to try their case before a magistrate judge.

[12] *Pinkozie v. Ricks*, 243 F.Supp.3d 768, (E.D. La. 2017)(Jolivette-Brown, J.) provides an excellent analysis of this Court's precedent on "related to" jurisdiction.

This decision is thorough, lengthy, and well-reasoned. The United States Supreme Court held that when a District Court properly refers a case to a bankruptcy court, the parties must still give consent.

The implied consent standard articulated in *Roell* supplies the appropriate rule for adjudications by bankruptcy courts under § 157. Applied in the bankruptcy context, that standard possesses the same pragmatic virtues—increasing judicial efficiency and checking gamesmanship—that motivated our adoption of it for consent-based adjudications by magistrate judges. See *id.,* at 590, 123 S.Ct. 1696. It bears emphasizing, however, that a litigant's consent—whether express or implied—must still be knowing and voluntary. *Id* at 684-685.[13]

In the most favorable scenario to confer *any* jurisdiction on the Bankruptcy Court in the case at bar, it only could have submitted proposed findings of fact and conclusions of law to the District Court - - not the power to finally adjudicate a state court tort case. This is also contemplated by the Local Rules of the Eastern District, 83.4.3. And as will be discussed herein, the Bankruptcy Court in this case was given greater powers than an Article III Judge.

---

[13] The District Court discounted this lengthy argument regarding Appellants' consent in a footnote. "Because Appellants' claims are "core" matters, Appellants' argument that their consent was required for the bankruptcy court to the adjudicate their claims (*see* R. Doc. 15 at 25-28) fails. The parties' consent is only necessary for bankruptcy courts to adjudicate "non-core" claims. *See* 28 U.S.C. § 157(b)(2)." ROA.546, FN 73.

The *Barton* doctrine on which the District Court relied to refer this case to the Bankruptcy Court simply does not apply here. The *Barton* doctrine is a common law principle that bars suits against court-appointed trustees and other fiduciaries absent court permission.  The doctrine stems from a U.S. Supreme Court decision in the 19th Century, *Barton v. Barbour*, 104 U.S. 126 (1881).  The Court said leave to sue a fiduciary must be received from "the court by which [the fiduciary] was appointed." *Id.* at 128.  And as this Court explained, "[u]nder that doctrine, before a plaintiff can sue a bankruptcy trustee, or a court-approved professional employed by a bankruptcy trustee . . . , in a forum other than the appointing court, leave of the appointing court must be obtained." *Matter of Foster*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023) at *5.

The *Barton* doctrine does not apply to either defendant because they are not trustees, employees of a trustee, fiduciaries, or other court-appointed officers. Again, even if the *Barton* doctrine applied, Appellants would have to have consented. Because the Appellees did something in bad faith that clearly was not ordered by the Bankruptcy Court, their acts were *ultra vires*.

In *Matter of Foster*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023), this Court concluded that the Defendants "did not plausibly act outside the scope of their duties," or *ultra vires*.  The Debtor's claims were barred by the *Barton* doctrine.  *Id.*

This lawsuit is predicated on the fact that Appellees acted outside the scope of their duties. The District Court's referral to the Bankruptcy Court "for all purposes" was in error, as was the Bankruptcy Court's rendering of substantive rulings.

## II. The Bankruptcy Court abused its discretion and committed legal error by denying the Motion to Recuse.

The Trahants appeal both the Bankruptcy Court's denial of their motion to recuse ROA.977-107 as well as the District Court's ruling on recusal. ROA.532-564. It would be difficult to imagine a case in which recusal would be more necessary than this one. The Bankruptcy Court's lengthiest Order by far was its Order on recusal.

This Court has recognized that a bedrock of justice is the appearance of impartiality:

> If Judge Ashe erred when he failed to recuse in these cases, that error was harmless. Nonetheless, as the arguments on this appeal support, potential conflicts of interest must be taken seriously by every member of the judiciary. The litigants and the public need to be confident in the impartiality of those who will decide legal disputes. This appeal is fair warning to each of us of the importance of assuring the reality and appearance of that impartiality. *Street v. BP Exploration & Production, Incorporated*, 86 F.4th 266, 273 (5th Cir. 2023) (Emphasis added).

Neither Appellants nor members of the public who have executed

Declarations in the case *sub judice* are confident of the impartiality of the bankruptcy

judge.

### A. *The 28 U.S.C. § 144 Affidavit*

Richard Trahant filed an affidavit under 28 U.S.C. § 144. ROA.834-842. On

September 20, 2023, as Appellants prepared to move to recuse the bankruptcy judge,

the District Court entered an Order and Reasons ROA.17-22, denying the 28 U.S.C.

144 recusal. The District Court stated that because a Motion to Recuse had not been

filed, the affidavit would be treated as a motion. ROA.17 at n. 1. The District Court

determined that, because § 144 only applies to the recusal of district judges, not

bankruptcy judges, it must be denied. ROA.21. Additionally, the Court found that a

§ 144 Affidavit must be filed before the judge who is the subject of the recusal

demand. ROA.22. Ultimately, the Bankruptcy Court denied Appellants' motion to

recuse. ROA.977-1007.

28 U.S.C. § 144 states:

> Whenever a party to any proceeding in a district court makes and files
> a timely and sufficient affidavit that the judge before whom the matter
> is pending has a personal bias or prejudice either against him or in favor
> of any adverse party, **such judge shall proceed no further therein,**
> **but another judge shall be assigned to hear such proceeding.**
>
> The affidavit shall state the facts and the reasons for the belief that bias
> or prejudice exists, and shall be filed not less than ten days before the
> beginning of the term at which the proceeding is to be heard, or good

cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. (Emphasis added).

The mere filing of the Affidavit by the clear terms of 28 U.S.C. § 144, requires nothing more. There is no necessity for filing a Motion to Recuse that accompanies that Affidavit, and the statute mandates that the "judge shall proceed no further therein" simply upon the filing of that Affidavit. Therefore, it was not appropriate for the Bankruptcy Court to proceed further or to require plaintiffs to file a motion to recuse.

Nevertheless, as Mr. Trahant acknowledged in his affidavit at footnote 1, while some courts have held that 28 U.S.C. § 144 does not apply to bankruptcy judges, other courts have considered affidavits made under Section 144 when contemplating the disqualification of a bankruptcy judge. ROA.834.[14]

Both the District Court and the Bankruptcy Court found that 28 U.S.C. § 144 does not apply to bankruptcy courts. Appellants disagree for two reasons. First, by not giving a party alleging bias the opportunity to have a second judge adjudicate the recusal issue, a bankruptcy judge would be afforded more power and autonomy in the area of recusal than both Article III judges and Federal magistrate judges.

---

[14] The District Court adopted Appellees' contention that the Trahants ignored controlling precedent on this issue. ROA.536-537. But clearly, they did not - - they explained why the facts of this case present a different application.

21

Second, the Bankruptcy Court was undoubtedly standing in the shoes of the District Court by presiding over a tort lawsuit initially filed in state court, removed, and referred to the Bankruptcy Court by the District Court, which resulted in the dismissal of Appellants' claims, only an act that an Article III Judge is empowered to do. Thus, by hearing this motion without having the matter allotted to a judge who knows nothing about this case, the very purpose of 28 U.S.C. § 144 was thwarted.

### B. The Content of Richard Trahant's Affidavit

There were several sealed status conferences held relative to the supposed protective order violation, but Judge Grabill excluded Mr. Trahant and his co-counsel while permitting a similarly situated lawyer to attend.[15] However, statements of bias made by the Bankruptcy Court during sealed status conferences, which Mr. Trahant was not allowed to attend, clearly emanated from <u>extrajudicial sources</u> because they are nowhere to be found in the Archdiocese of New Orleans bankruptcy proceeding.

During a February 11, 2022 conference, Judge Grabill referenced a long-held suspicion that "something else is going on" since the "start of this case." ROA.1946. She did not explain her suspicion. There is nothing in the record to support this

---

[15] In the Order denying recusal, the Bankruptcy Court ignores this fact. Likewise, the District Court ignored it in its appellate decision. This fact alone demonstrates that Mr. Trahant was singled out for disparate treatment based on the bankruptcy judge's *animus*.

statement, so Mr. Trahant only can conclude that Judge Grabill's suspicion came from off-the-record and undisclosed extrajudicial sources.

During the April 14, 2022 status conference, Judge Grabill stated, "But, you know looking at this particular dynamic here, my concern is that, you know, I understand that there are, what, three attorneys that are ***longtime friends, maybe partners, maybe they're not in the same firm***.    But they definitively have represented a significant chunk of the abuse claimants and have litigated down in the CDC.  And they've litigated together, correct?  And they went to –***perhaps they went to high school together***, ***perhaps they've been long-term friends for a long time***." ROA.2067 (Emphasis added).  Mr. Trahant and his co-counsel did not all go to the same high school, and none of them knew one another in high school, college, or law school.  This incorrect information also must have come from some source extra-judicially.

During this same conference and without having read Mr. Trahant's Declaration and without any evidence whatsoever, Judge Grabill stated, "you can't get leverage on the Archdiocese by calling up the Advocate."  She then speculated that it is "understandable, honorable whatever" if there was a "legitimate concern with ... <u>protecting children.</u>"  But then she states that a "more cynical person" might have done it to gain "leverage" going into mediation by making the debtor "softer in the court of public opinion . . . but we don't know." ROA.2072 (Emphasis added).

23

Mr. Trahant is at a loss to understand how getting a child predator off of a school campus has *anything* to do with mediation. Importantly, there was no mediation scheduled when these events occurred in January of 2022. These musings also appear to have been based on some extrajudicial but incorrect information Judge Grabill had received about Mr. Trahant.

During the June 13, 2022 status conference, in reference to the recent removal of Mr. Trahant, his co-counsel, and their clients, the Bankruptcy Court stated, "It makes me nervous, but we have to, you know, there are a few, ***a few bad, bad actors***, but, on the whole, the committee members have signed the protective order" ROA.735 (emphasis added). Calling a lawyer a "bad, bad actor" does not reflect fairness to Mr. Trahant, especially in a bankruptcy proceeding arising out of liability for damages caused by men sexually abusing children.

This statement reflects that Judge Grabill has obvious *animus* against Mr. Trahant, which should have disqualified her from presiding over the Trahants' claims or the recusal proceeding. Miriam-Webster Dictionary defines a bad actor as "a person . . . who purposely and usually repeatedly engages in very bad behavior (such as committing crimes or causing harm to others)" and "something that causes trouble, danger, or a problem." Similarly, the Cambridge Dictionary defines a bad actor as "a person or organization responsible for actions that are harmful, illegal, or morally wrong" and "something that is harmful or dangerous." That Judge Grabill

has used this term to describe Mr. Trahant, a litigant later coming before the Bankruptcy Court under protest, clearly reflects the bias that demands recusal.[16]

The supposedly contextual explanation given in the Order denying recusal provides no clarity, but an *attempted* explanation that is unacceptable to the Trahants. ROA.989-1002.

Additionally, later in the day on June 13, 2022, the Bankruptcy Court entered the Order to Show Cause setting the sanctions hearing against Mr. Trahant in the record ROA.353-355. Curiously, the Order included the exclamatory statement **"Yes!"** in the caption ROA.353 (caption).  The next day, with no explanation, the Bankruptcy Court replaced the June 13, 2022 Order to Show Cause to remove the exclamatory statement from the caption ROA.1313-1315. This second version of the Order, although entered on June 14, 2022, bears the same docket number and date as version one of the June 13, 2022 Order.  A subsequent entry refers to the first version as having a "typographical error."  Using an exclamation point cannot be a typographical error.  This apparently gleeful exclamation at the prospect of Mr. Trahant being sanctioned has never been explained, but reeks of bias against him.[17]

---

[16] Notably, the District Court made no mention of the "bad, bad actor" comment.  This was a massive issue to overlook.

[17] The Bankruptcy Court's attempt to explain this exclamation only made it seem more suspicious. In the Bankruptcy Court's Order denying recusal, the Court speculated as to how this *might* have happened. ROA.1002, FN 6. To Appellants, the answer is simple - - produce the metadata from the document. The District Court echoed the bankruptcy court's specious reasons. ROA.539-540.

This **"Yes!"** entry never has been adequately explained, and Mr. Trahant should be entitled to the metadata from this entry to understand why a judge, her law clerk, or anyone else who may have drafted that Order would have expressed such an exclamation for Mr. Trahant's impending plight.

Many articles have been written, locally, nationally, and internationally about the Bankruptcy Court's removal of Mr. Trahant's clients from the UCC and the severe sanction the Bankruptcy Judge leveled against him.  One such series of articles was written by New Orleans freelance journalist Jason Berry and published by the Guardian.  The first of this three-part series was published on November 29, 2023. ROA.393-404.  Attorney Jeff Anderson is a prominent national attorney from Minnesota who represents survivors of clergy abuse.  He said, "My firm has been involved in 25 church bankruptcies," . . . "New Orleans is unique. A hostile judge has bought into the church's position to attack a state court lawyer. The judge sees the lawyer as a villain."  Neither Richard nor Amy Trahant ever had met nor communicated with Mr. Anderson before this.

The very next day on November 30, 2023, without giving the Trahants oral argument as she had said she would, the Bankruptcy Judge denied the Trahants' Motion to Remand. ROA.54-69.  Less than a week later, on December 6, 2023, the following exchange took place between undersigned counsel and the Bankruptcy Court:

MR TRUITT:

And I would note that there was an article published in The Guardian the day before you issued this ruling. It was very critical of the Court and I, I, I can't help but wonder whether or not the timing of this ruling was because of that article.

THE COURT: Well, I can --

MR. TRUITT: We --

THE COURT: -- assure you, Mr. Truitt, that I don't read the newspaper. <u>I have no idea what you're talking about</u>. (Emphasis added) ROA. 360, ll. 7-15.

This response from the Bankruptcy Court, especially "I have no idea what you're talking about" surprised the Trahants and undersigned counsel because as Mr. Berry had written, "A spokesperson for Judge Grabill denied a Guardian interview request, saying: 'No comment.'" How could the Bankruptcy Court have been unaware of this critical article a week after it was published?[18]

A recent case from the Sixth Circuit Court of Appeals, *United States v. Liggins* 76 F.4th 500, (6th Cir. 2023) provides a good roadmap for the application of 28 U.S.C. 455(a) and (b)(1). *Liggins* was a criminal case, and at a pretrial hearing, the district judge remarked that Liggins "look[ed] like a criminal to me" and that Liggins

---

[18] In its appellate opinion, the District Court ignored the significant publicity this issue has generated, as well as the blatant discrepancy between the bankruptcy judge's statement and Mr. Berry's statement that he reached out to the bankruptcy judge for comment. This statement engendered more distrust of the bankruptcy judge by Appellants, and this publicity alone should have prompted the bankruptcy judge to recuse herself.

27

was doing "what criminals do." Liggins moved for the district judge's recusal based on these remarks, among others, and the district court denied the motion. Liggins went to trial and was convicted of serious felonies. Based on the District Court's prejudicial comments, the Sixth Circuit vacated the conviction and sentence, and remanded the case for trial before a different District Judge.

The day before trial was scheduled to begin, Liggins moved for recusal of the district judge under 28 U.S.C. § 455(a) based on the district judge's remarks at the January 30, 2020 hearing. The next day, during the trial but outside the presence of the jury, the district judge addressed the recusal motion, stating that he appreciated the "opportunity to clear up a few things that ha[d] been bothering [him] for a few months." *Id* at p. 504. The District Judge continued, "just because I got mad does not mean I'm biased against Mr.—Mr. Liggins. I'm not, trust me. I give Mr. Liggins the same rights and opportunities here to demonstrate his innocence or lack of guilt as any other litigant, and I believe that my conduct at the final pretrial conference, in ruling on the motions in limine and in today's hearing do not evidence any bias. In fact, they—they evidence lack of partiality." *Id.* As authority for its denial of Liggins' recusal motion, the district court relied on *Liteky v. United States*, 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).

The Sixth Circuit rejected the district court's reasoning, "Based on the district judge's inappropriate remarks at the January 30, 2020 hearing, we conclude that the

district judge should have recused himself from Liggins' case, and therefore abused his discretion by denying Liggins' recusal motion." *Liggins*, at p. 505. The Sixth Circuit continued, "And regardless of the district judge's intended meaning, we must consider the interpretation that a reasonable observer of this public hearing could have made, for we must guard against not only actual bias but also the appearance of bias, which 'demeans the reputation and integrity' of the court." *Id* at p. 8 citing *Williams*, 579 U.S. at 15, 136 S.Ct. 1899. The *Liggins* Court continued, "We determine that the district court abused its discretion in denying Liggins' recusal motion because the district judge's remarks at the hearing on January 30, 2020, demonstrated 'a deep-seated ... antagonism that would make fair judgment impossible,' *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147, and therefore required recusal under 28 U.S.C. § 455. In this case, the risk of undermining the public's confidence in the judicial process is significant." *Liggins* at pp. 508-509. The *Liggins* Court concluded with a statement that could not be more applicable than in the case *sub judice*, "Such remarks are wholly incompatible with the fair administration of justice." *Id*. at p. 509.

There is no logic that saying a criminal defendant "looks like a criminal" outside the presence of a jury (when there would be a jury deciding his fate) is any worse than calling a member of the bar with an unblemished disciplinary record a

"bad, bad actor" for objecting to a high school having a child predator priest on its campus. To the Trahants, the latter is significantly worse.

Regarding Judge Grabill's bias for Mr. Mintz and Jones Walker, the content of those sealed status conferences demonstrates that Judge Grabill did exactly what Mr. Mintz wanted her to do absent a motion, notice, input, or opportunity to object from Mr. Trahant. Moreover, Judge Grabill's partnering with Jones Walker or the Apostolates' attorneys for CLEs and having taught a class with Mr. Mintz must be viewed through the lens of the Trahants as litigants, not through the lens of Mr. Trahant as an attorney. While each thing individually might not be a basis for recusal, the totality of the circumstances gives the Trahants and many others the undeniable impression that Judge Grabill favors Mr. Mintz and Jones Walker.

### C. The Contents of Amy Trahant's Declaration

Amy Trahant has no direct involvement in the Archdiocese of New Orleans bankruptcy case. She has signed a Declaration, which reads:[19]

> Obviously, I am keenly aware of Judge Meredith Grabill's $400,000 sanction against my husband. My husband and I share community property, so Judge Grabill sanctioned me $200,000.

> This sanction and the fortune my husband and I have spent in attorney's fees addressing it have financially damaged not only my husband and

---

[19] Glaringly conspicuous in its absence from the Bankruptcy Court's Order denying recusal is *any* discussion of Amy Trahant's compelling Declaration, with barely a mention at ROA.1005. Likewise, the District Court barely mentioned the existence of Mrs. Trahant's Declaration, but then without discussing the content, inferred that it contained legal conclusions; it does not. ROA.541. These omissions are significant because Mrs. Trahant is a party.

me, but also two of our children who are in college and rely on us for financial support.

The media fallout has impacted all four of our children. Ultimately, my children and I know that their father and all of us have been punished because my husband did the right thing. We don't question his motives because we know who he is.

It is abundantly clear to me that the defendants in this case, and possibly Judge Grabill, caused her Order of June 7, 2022 to be mailed to over 16,000 people worldwide. I can come to no other conclusion but that this was done in order to humiliate and embarrass my husband.

I firmly dispute that Judge Grabill could be fair to my husband (and me) given the damage she already has inflicted on our family and the extensive media coverage.

I believe that it would be a significant appearance of impropriety for Judge Grabill to preside over this case because I believe that she has demonstrated incredible bias against my husband, and I do not believe that we could ever get a fair shake in her court.

My husband and I reached out to several people to sign Declarations supporting this motion, and we got an overwhelming response, even from many people we do not know and never have met. We also got some responses that certain people believed the content of the Declaration, but declined to sign one for fear of retribution.
ROA.2385-2386.

When Amy Trahant considered being a co-plaintiff in this lawsuit and consulted with her husband and their counsel, she envisioned having a fair judge and jury who knew nothing about this case but would consider the factual and legal issues with an unbiased perspective. Instead, this case got routed back to the same judge whom she views as having done so much damage to her family. To a non-

lawyer like Mrs. Trahant, this is the antithesis of a fair process that might provide her with the opportunity to obtain the impartial justice she seeks.

### D. The Supporting Declarations of Other People

This case has extremely unique facts with respect to recusal in that the circumstances surrounding the basis for the Trahants' lawsuit have played out in a highly public way. The Trahant family has been inundated with missives of support for themselves and missives of displeasure for the manner in which Mr. Trahant has been treated by Judge Grabill. Largely this displeasure has been expressed to the Trahants relative to the $400,000 sanction. While this Court may see that sanction as a cost associated with an alleged confidentiality violation, the sanction is so out of proportion to a reasonable punishment as to be self-evident of bias against a lawyer who has practiced in numerous State and Federal courts around the State of Louisiana and other states for thirty years with an unblemished professional record – until now.

As such, the Trahants reached out to people to see if some of these people would sign Declarations. Over forty individuals signed Declarations, which standing on their own, should satisfy the requirement of recusal under both 28 U.S.C. 455(a) and (b)(1).[20] ROA.2387-2443. Several individuals who have executed these

---

[20] While Mr. Trahant could have solicited and obtained Declarations from most if not all of his clergy sexual abuse clients, he did not do so.

Declarations are people the Trahants do not know and never have communicated with.  And yet, they were eager to sign these Declarations. Those who signed Declarations span all age groups and occupations.  There are several physicians, attorneys, bankers, a Christian minister, retired law enforcement, and many others.[21] In order to reject the content of these Declarations, this Court must come to the conclusion that every one of these Declarants is <u>not</u> a "well-informed, thoughtful, and objective observer;" but that <u>all</u> of them are "hypersensitive, cynical, and suspicious" people. *U.S. v. Jordan*, 49 F. 3d 152, 156 (5th Cir. 1995).  This simply cannot be the case for these Declarants.

The Bankruptcy Court relied on *Melendres v. Arpaio*, No. 07-2513, 2015 WL 13173306 (Dist. of Ariz). for the proposition that "[t]hose declarations are not appropriate for the Court to consider in deciding the legal issue of recusal." (Rec. Doc. 51, p. 30). However, that was **not** a holding in *Melendres* at all, not even *dicta*. The *Melendres* Court stated, "However, the Rotunda declaration—as well as Plaintiffs' corresponding declaration by Stephen Gillers, a professor at New York University School of Law—is an expert opinion. The law of this and every Circuit is that while an expert may provide an opinion to help the jury or judge understand

---

[21] Several attorneys declined to sign a Declaration for fear of retribution. ROA.2386.

a particular fact, the expert is not permitted to give an opinion as to his legal conclusion." *Id.*[22]

Undoubtedly, not a single Declaration submitted by the Trahants was tendered by an expert, nor do the Declarations offer a legal or expert opinion. More important, there does not appear to be any jurisprudence to support the Bankruptcy Court's erroneous position that Declarations cannot be considered within the context of recusal. But what could be more relevant than the observations of other United States' citizens relative to the obvious bias of a judge?

"Scienter is not an element of a violation of § 455(a)." *Liljeberg*, 108 S.Ct. at 2202, 100 L.Ed.2d at 859. So, like lack of knowledge of a disqualifying circumstance, a belief that § 455 does not mandate recusal "does not eliminate the risk that 'his (her) impartiality might reasonably be questioned' by other persons," thereby mandating recusal under § 455(a) notwithstanding such belief. *Id.* at 2202-03, 100 L.Ed.2d at 859-60 (quoting 28 U.S.C. § 455(a)).

So clearly, it is of no moment whether Judge Grabill believed that she could be fair and impartial. The issue is whether others might reasonably question her

---

[22] On appeal, the District Court opined that these Declarations actually contain legal conclusions and opinions, but they do not. ROA.451. There is no explanation from either of the lower courts as to why people consuming media, deciding that the bankruptcy judge is biased against Mr. Trahant, and then agreeing to stick their necks out by signing Declarations to that effect is in any way a legal conclusion or opinion. These are impressions of every day United States citizens, and Appellees offered nothing in response. ROA.2387-2443.

presiding over this case - - and many people do. This is the exceedingly rare occasion

where individuals other than the litigants have expressed such.

### E. *The prior recusal by Judge Darrel J. Papillion*

This case was initially allotted to District Judge Darrel J. Papillion.  Shortly

thereafter, Judge Papillion recused himself stating:

> The undersigned United States District Judge recuses himself from
> further participation in this case pursuant to 28 U.S.C. § 455(a), and
> within the spirit of 28 U.S.C. § 455(b)(2), because while engaged in the
> private practice of law, the undersigned may have acquired certain
> knowledge that, in fairness to all concerned and in the interest of justice,
> warrants his recusal from this action.
> ROA.621.

An Article III judge, as the basis for his recusal in this very case, wrote,

"because while engaged in the private practice of law, the undersigned may have

acquired certain knowledge that, in fairness to all concerned and in the interest of

justice, warrants his recusal from this action."  Although the Trahants do not know

what this "certain knowledge" might be and never have spoken to Judge Papillion

or any of his former law partners about this lawsuit at any time, his abundance of

caution in stepping away from this case could not be more in contrast with the

Bankruptcy Court not recusing itself from a case that it already had far too much

knowledge of.  Not only should Judge Papillion's recusal have been instructive and

binding on the Bankruptcy Court's recusal decision, but also Judge Papillion cited

§455(a), indicating that his impartiality might reasonably be questioned if he had presided over this case.

It is inconceivable that Judge Papillion presiding over this case would have created an appearance of impropriety or that his impartiality might reasonably be questioned, but that no appearance of impropriety existed with the Bankruptcy Court presiding over this case, and that reasonable people do not question the Bankruptcy Court's impartiality.

At footnote 7 of its Order, the Bankruptcy Court wrote: "Judge Papillion did not identify his bases for deciding to recuse himself from hearing matters involving the Archdiocese, but that decision is individual to him just as this Court's decision is individual to her." ROA.1002. However, Judge Papillion *did* give a basis for his recusal, and his Order says nothing about "matters involving the Archdiocese."[23]

As litigants, the Trahants are entitled to a level playing field and a "blank slate" so to speak. They got neither here. Intellectual honesty leads to the inescapable conclusion that the Trahants could not get fair justice from this bankruptcy judge.

Plaintiffs moved for recusal under 28 U.S.C. 455(a) and (b)(1), which read:

---

[23] Curiously, the District Court in its appellate opinion writes that Appellants fail to explain why Judge Papillion's recusal should be binding on the Bankruptcy Court, ignoring the exact same reasoning cited to this Court herein. ROA.542.

**(a)**Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
**(b)**He shall also disqualify himself in the following circumstances:
**(1)**Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

These provisions afford separate, though overlapping, grounds for recusal. Subsection (b)(1) pertains to specific instances of conflicts of interest, while subsection (a) deals with the appearance of partiality generally. Further, whenever a judge's partiality ***might*** reasonably be questioned, recusal is required under § 455(a), irrespective whether the circumstance is covered by § 455(b). *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 860 n. 8, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)(Emphasis added).

The test to determine whether a judge should be recused is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Intern. Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). A court making the decision must consider how the facts would appear to a "well-informed, thoughtful, and objective observer, rather than the hypersensitive, cynical, and suspicious person." *U.S. v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995); *see also Bryce v. Episcopal Church in the Diocese of Col.*, 289 F.3d 648, 659 (10th Cir. 2002) ("The test is whether a reasonable person, knowing all the

relevant facts, would harbor doubts about the judge's impartiality." (*quoting Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)).

Recusal under Section 455(b)(1) requires recusal when a judge has a "personal bias" in favor or against a party. Typically, personal bias needs to be directed at a party and extrajudicial. *Nickerson-Malpher v. Baldacci*, 522 F.Supp.2d 293, 296 (D. Me. 2007). And while the presence or absence of an extrajudicial source is a significant factor, an extrajudicial source alone is neither a necessary nor sufficient condition for recusal. *Liteky v. United States*, 510 U.S. 540, 554, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Andrade*, 338 F.3d at 455. *Liteky*, 510 U.S. at 554-55, 114 S.Ct. 1147 (Emphasis added). The rule about extrajudicial sources "more or less divides events occurring or opinions expressed in the course of judicial proceedings from those that take place outside of the litigation context and holds that the former rarely require recusal." *Andrade*, 338 F.3d at 455 (footnote omitted) (citing *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147). "Non-extrajudicial facts 'do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Tejero v. Portfolio Recovery Assocs.*, 955 F.3d 453, 463 (5th Cir. 2020) (quoting *Liteky*, 510 U.S. at 555, 114 S.Ct. 1147). An opinion is not extrajudicial if it was "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings." *Liteky* at 555, 114 S.Ct. 1147.

### III.    The District Court committed legal error by denying the Motion to Recuse.

The District Court committed reversible error because it legally erred when it refused to recuse itself from sitting in review of its own Orders. ROA. 898-908. Here, the District Court was reviewing the legal efficacy of its earlier decisions.

Black letter law prohibits a federal judge from sitting as an appellate judge over a case in which he/she has made rulings as a trial judge.  28 U.S.C.A. § 47, entitled "Disqualification of trial judge to hear appeal", provides: "<u>No judge shall hear or determine an appeal from the decision of a case or issue tried by him.</u>" (Emphasis added).

Section 47's "case or issue" language refers to a final Order of the lower court which may be appealed to a higher court. *U.S. v. Garramone*, E.D. Pa. (1974), 374 F. Supp. 256.  This relates to all final Orders, not solely trials.  The fairness and public reputation of judicial proceedings depend, in part, that review of final orders be conducted by "a judge other than the judge who presided over the case at trial." *Clemmons v. Wolfe,* 377 F.3d 322, 325 (3d Cir.2004).  This is especially important within the context of this litigation where one of the bankruptcy court's Orders being appealed relates to recusal, and in a broader sense, the fact that over half of the District Judges have recused themselves from matters pertaining to the Archdiocese of New Orleans bankruptcy case.

Importantly, this statute has been applied within the context of bankruptcy appeals. In a case brought by a *pro se* litigant in which recusal was denied based on dissimilar circumstances, the United States Bankruptcy Appellate Panel of the Sixth Circuit Court of Appeals explained:

> The Panel further notes that Congress has previously addressed the issue of a federal trial judge's participation in appellate review when it enacted 28 U.S.C. § 292(a), which provides for a district judge's service as part of a circuit panel. In such circumstances, a district judge is prohibited from hearing an appeal from the district judge's own docket but not from hearing an appeal from other judges in that same district. 28 U.S.C. § 47. Such precision by Congress in enacting legislation governing federal trial judges' participation in appellate service forecloses the argument advanced by the Appellant that a conflict exists when this Panel is acting in accordance with specific statutory authorization.
> 215 B.R. 826, 831, 39 Collier Bankr.Cas.2d 559, 1998 Fed. App. 0003P

All parties deserve impartiality.  As this Court recently cautioned: "The litigants and the public need to be confident in the impartiality of those who will decide legal disputes. This appeal is fair warning to each of us of the importance of assuring the reality and appearance of that impartiality." *Street v. BP Exploration and Production Incorporated*, 85 F.4th 266,  (5th Cir. 2023).

## IV.    The Bankruptcy Judge should have remanded this case to state court.

The Trahants appeal Bankruptcy Court's denial of their motion to remand. ROA.54-69.

## I.     *The District Court Lacked Federal Subject Matter Jurisdiction*

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L.Ed.2d 318 (1987) (citing 28 U.S.C. § 1441(a)). "Because federalism concerns are inherent in removing a case from the state court system, the removal statute is strictly construed, and any doubt as to the propriety of removal must be resolved in favor of remand." *Benesmart, Inc. v. Total Financial Group*, LLC, 2012 WL 6020340, p. 3 (E.D. La. 2012) (Barbier, J.) (citing *Manguno v. Prudential Prop. and Cas. Ins. Co.,* 276 F.3d 720, 723 (5th Cir. 2002)).

The court determines whether it has jurisdiction by considering the claims in the plaintiff's state court petition as it existed at the time of removal. *Manguno,* 276 F.3d at 723 (citing *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 264 (5th Cir.1995)). If the requirements for federal jurisdiction are not apparent on the face of the plaintiff's state court petition, the removing defendant may present facts and evidence in its notice of removal or by affidavit to establish that jurisdiction existed at the time of removal. *See Garcia,* 351 F.3d at 638-39.

## II.     *Mandatory Abstention Applies.*

In their removal papers, Appellees failed to discuss the very subpart of the United States Code that applies to cases such as this one.

Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which states:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, regarding which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In *In re Forth Worth Osteopathic Hospital, Inc*., 42 ALR F.2d 751, 406 B.R. 741, 745 (2009) the United States Bankruptcy Court for the Northern District of Texas, Judge D. Michael Lynn wrote:

> A bankruptcy court is granted jurisdiction to hear core proceedings, matters arising under or in a case under title 11 of the United States Code. See 28 U.S.C. §§ 157(b) and 1334(b).[6] Bankruptcy courts are also granted authority to hear matters "related to" cases filed under title 11 of the United States Code. *Id.*[7] The issues raised in the Adversary are state law claims **between non-debtors** and, as such, do not fall within the jurisdictional grant respecting matters "arising in", or "arising under", or "core proceedings".  (Emphasis added)

This is exactly the dynamic between the parties to this litigation; the Trahants and all defendants in this case are "non-debtors," and the Trahants only have advanced state law causes of action.

Abstention by the bankruptcy court (and by extension this Court) is thus mandatory (A) if the subject dispute (1) is a state law claim or cause of action; (2) is related to the underlying bankruptcy case but does not arise in that case or under the

Bankruptcy Code; and (3) is not subject to federal jurisdiction but for section 1334(b); and (B) if the dispute is the subject of an action commenced in a state court and can be timely adjudicated there. *Id*. at 746.

For the purposes of "related to" jurisdiction, the bankruptcy court may exercise jurisdiction "if the outcome of [the] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 fn. 6, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995); *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987).  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and ... in any way impacts upon the administration of the bankruptcy estate." *Feld v. Zale Corp., (Matter of Zale Corp.),* 62 F.3d 746, 752 (5th Cir.1995).

In their removal papers, Appellees did not contend that the "outcome [of this lawsuit] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)."  This litigation is between parties that are neither debtors nor creditors to the bankruptcy estate.

### III.    *Permissive Abstention Applies.*

Under the doctrine of permissive abstention, "courts have broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." *Gober v. Terra*

*+ Corp., (In re Gober),* 100 F.3d 1195, 1206 (5th Cir.1996) (citations omitted), as

cited in *Barbee v. Colonial Healthcare Ctr., Inc.,* 2004 U.S. Dist. LEXIS 4868, 2004

WL 609394 (N.D. Tex. Mar. 22, 2004). The decision to abstain or not to abstain is

committed to the discretion of the trial court. See *Id.,* citing *Howe v. Vaughan (In re*

*Howe),* 913 F.2d 1138, 1143 at fn. 6 (5th Cir.1990).

The twelve factors the court will look to when deciding whether to permissively

abstain are:

> (1) The effect or lack thereof on the efficient administration of the estate
> if a court recommends abstention;
> (2) The extent to which state law issues predominate over bankruptcy
> issues;
> (3) The difficulty or unsettled nature of the applicable state law;
> (4) The presence of a related proceeding commenced in state court or
> other nonbankruptcy court;
> (5) The jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> (6) The degree of relatedness or remoteness of the proceeding to the
> main bankruptcy case;
> (7) The substance rather than form of an asserted "core" proceeding;
> (8) The feasibility of severing state law claims from core bankruptcy
> matters to allow judgments to be entered in state court with enforcement
> left to the bankruptcy court;
> (9) The burden on the bankruptcy courts docket;
> (10) The likelihood that the commencement of the proceeding in
> bankruptcy court involves forum shopping by one of the parties;
> (11) The existence of a right to a jury trial; and
> (12) The presence in the proceeding of nondebtor parties.

*Denton County Elec. Coop. v. Eldorado Ranch, Ltd. (In re Denton County*
*Elec. Coop.),* 281 B.R. 876, 881 (Bankr.N.D.Tex.2002).

Apparently, not only do almost all of these factors support abstention and a remand to state court, but they all do.

The bankruptcy courts' jurisdiction is established by sections 157 and 1334 of title 28 of the United States Code. *Celotex,* 514 U.S. at 307, 115 S. Ct. 1493. Section 1334(a) states that "the district courts shall have original and exclusive jurisdiction of all cases under title 11," which refers to the bankruptcy petition itself. *Wood v. Wood (In re Wood),* 825 F.2d 90, 92 (5th Cir.1987). Section 1334(b) states that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." Therefore, although Congress expressed its intent to create an exclusive federal forum regarding cases "under title 11," "[i]n other matters arising in or related to title 11 cases, unless the Code provides otherwise, state courts have concurrent jurisdiction." *Sanders v. City of Brady (In re Brady, Tex., Mun. Gas Corp.),* 936 F.2d 212, 218 (5th Cir.1991).

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Proceedings "arising in" bankruptcy are "administrative matters that arise *only* in bankruptcy cases." *CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.),* 363 B.R. 559, 565

(Bankr.N.D.Ill.2007) (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir.1987).

Service of a court order is a common issue found in every court in the United States. Whether a state court proceeding, federal court proceeding, district court, or appellate court, court orders are served on the parties in a myriad of ways. Service of a court order is not unique to an administrative matter that arises only in bankruptcy cases, so no complex federal bankruptcy law is implicated.

Finally, it is mandatory that the federal question at issue, if any, be "substantial." In *Singh v. Duane Morris, LLP,* 538 F.3d 334, 339 (5ᵗʰ Cir. 2008) this Court concluded that a federal question was not "substantial" in part because it was "predominantly one of fact." There, the plaintiff, Singh, had brought a malpractice action in state court against the attorney who had represented him in a trademark infringement action. *Id.* at 337. The defendant removed the case to federal court, arguing that resolving the malpractice claim require[d] resolving a federal question, whether Singh could have established secondary meaning in his trademark." *Id.* In other words, the defendant pointed out that for Singh to prevail, the presiding court would have to determine—under *federal trademark law*—that the evidence that he had failed to present would have established secondary meaning. This Court held that this federal question was "not substantial." *Id.* at 338.

46

Applying *Singh* in *Marren v. Stout*, 930 F. Supp.2d 675, 685 the United States

District Court for the Western District of Texas, Judge David Alan Ezra wrote:

> As in *Empire Healthchoice,* therefore, the court's determination that the
> state-law claim did not present a "substantial" question of federal law
> rested primarily on its determination that the case merely required a
> court to *apply* federal law to the facts, not to settle a dispute over the
> *meaning* of federal law. *See Empire Healthchoice,* 547 U.S. at 701, 126
> S. Ct. 2121 (distinguishing *Grable* on the ground that it presented a
> "nearly 'pure issue of law,' " unlike the "fact-bound and situation-
> specific" claim at issue in the case before it); *see also Adventure
> Outdoors Inc. v. Bloomberg,* 552 F.3d 1290, 1300 (11th Cir.2008)
> (finding that a federal question was not substantial because the
> "meaning of the relevant federal law" was clear and not actually in
> dispute; only the application of the law to the facts was); *Bennett v. Sw.
> Airlines Co.,* 484 F.3d 907, 910 (7th Cir.2007) (Easterbrook, J.)
> (denying federal-question jurisdiction in a case involving "a fact-
> specific application of rules that come from both federal and state law
> rather than a context-free inquiry into the meaning of a federal law").

Just as in *Empire Healthchoice* and *Singh,* this case does not require a court

to determine the *meaning* of a federal law.

The construction of the federal law about classifications of workers as

employees or independent contractors—which merely incorporates by reference

"the usual common law rules" on the subject, *see* I.R.C. § 3121(d)(2)—is not in

dispute; only the *application* of that law to the facts is. Neither party argues that an

ambiguous provision of federal law should be interpreted in a way that would

guarantee them victory. *Cf. Grable,* 545 U.S. at 315, 125 S.Ct. 2363.

There is no "substantial" question of federal bankruptcy law in the case at bar to confer federal jurisdiction on this Court.

**V. The Bankruptcy Court abused its discretion and erred as a matter of law in granting summary judgment.**

The Trahants appeal the Bankruptcy Court's grant of summary judgment. ROA.2444-2463.

The Bankruptcy Court abused its discretion and committed legal error by basing its decision to grant the motion on a fabricated falsehood that its Order instructed the parties to serve everyone on the "Mailing Matrix". The Bankruptcy Court simply got it wrong:

> At that hearing, the Court stated its intention, as instructed in the text of the June 7, 2022 Order, for the Order be served on the entire Mailing Matrix and that service not be limited to the Limit-Notice Order. The Court explained that its findings contained in the Order broadly affected the Committee's constituency and other parties' interests in the case and, therefore, the June 7, 2022 Order warranted service to the entire Mailing Matrix. ROA.2456.

The Bankruptcy Court never said this or anything close to it. The service instructions said <u>nothing</u> about serving the "entire mailing matrix." Instead, the service instructions in fact stated this:

> IT IS FURTHER ORDERED that counsel for the Debtor serve this Order via first-class U.S. Mail on those parties in interest who will not receive service via this Court's CM/ECF system and file a certificate of service within three days.

Obviously, this highly inaccurate statement was necessary for the Bankruptcy Court to reach the conclusion that it did. Mr. Trahant has served several documents in the bankruptcy case, but he never was an "arm of the court."

The Local Rules for the Bankruptcy Court for the Eastern District of Louisiana state:

**RULE 1007-2 Mailing Matrix and Amendments to Mailing Matrix**

A. Voluntary petitioners must file a <u>complete mailing matrix containing the correct name and address of all known creditors and other parties in interest.</u> In the case of an involuntary petition, the debtor must file a complete mailing matrix containing the correct name and address of all known creditors and other parties in interest within fourteen (14) days of entry of an order for relief in the case. (Emphasis added)

The full creditor mailing matrix does not contain the names and addresses of all known creditors and other parties in interest, as the only copy of that list available to plaintiffs has almost all of the names and addresses "intentionally omitted." Appellants could not have objected to a list that they have never been made privy too. This information is in the exclusive control of Appellees, who evaded discovery by filing their premature and dispositive Motion for Summary Judgment.

There is nothing in this rule about redacting information from a mailing matrix or including individuals who are neither creditors nor parties in interest, which are disputed issues of fact here. This highly redacted mailing matrix violates Rule 1007-2.

The Bankruptcy Court relied almost exclusively on *Baron v. Sherman* (*In re Ondova Ltd. Co.*), 914 F.3d 990, 993–94 (5th Cir. 2019). First, this opinion unequivocally supports Appellants' argument that a bankruptcy court is not empowered to make substantive rulings in cases like this.

Again, no court order instructed the Appellees to serve the entire mailing matrix, so contrary to the Bankruptcy Judge's finding of "absolute immunity" for these defendants, they start with "qualified immunity" if any immunity at all. As the Fifth Circuit succinctly stated, "We thus hold that bankruptcy trustees in the Fifth Circuit are entitled to qualified immunity for personal harms caused by actions that, while not pursuant to a court order, fall within the scope of their official duties." *Id.* at 993.

The Bankruptcy Court then rests its decision on Texas law. "In turn, that absolute immunity extends to the professionals of trustees and debtors-in-possession acting at the direction of the trustee or debtor-in-possession and pursuant to court orders. See *Id.* at 994." ROA.2456. The Bankruptcy Court failed to reference footnote 11, which states, "*See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 349 (5th Cir. 2016) (holding that attorneys are entitled to immunity under Texas law from suit by non-clients, unless the attorney's conduct 'd[oes] not involve the provision of legal services' or is 'entirely foreign to the duties of any attorney.'" The Bankruptcy Court cited to no comparable provision under Louisiana law.

### A. The Motion for Summary Judgment was premature

Rule 56(d) of the Federal Rules of Civil Procedure provides that a court may

deny a motion for summary judgment when deemed premature. Rule 56(d) provides:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant
> shows by affidavit or declaration that, for specific reasons, it cannot
> present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

*See Zeng v. Tex. Tech Univ. Health Sci. Ctr. at El Paso*, 836 F. App'x 203 (5th Cir.

2020); Emery, 793 F. App'x at 296; *Wade v. Brennan*, 647 F. App'x 412, 417 (5th

Cir. 2016). "[I]n the Fifth Circuit, courts have discretion to deny a motion for

summary judgment as premature." *George v. Go Frac, LLC*, No. SA-15-CV-943,

2016 WL 94146, at *2 (W.D. Tex. Jan. 7, 2016); *Sewell v. Sewerage & Water Bd.*

*of New Orleans*, 697 F. App'x 288, 291 (5th Cir. 2017); *Prospect Capital Corp. v.*

*Mut. of Omaha Bank*, 819 F.3d 754, 757 (5th Cir. 2016); see 10A CHARLES ALAN

WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2717 (4th ed.

2020) ("Deferring a motion is a particularly appropriate step for the court to take if

it believes that the summary judgment request is premature."). A motion for

summary judgment is premature where "basic discovery has not been completed,

particularly when the moving party has exclusive access to the evidence necessary

to support the nonmoving party's claims." *Phongsavane v. Potter*, No. CIVASA05CA0219, 2005 WL 1514091, at *5 (W.D. Tex. June 24, 2005); *Whitfield v. Miss. Bureau of Narcotics*, No. 3:17CV987-HSO-JCG, 2019 WL 6534144, at *4 (S.D. Miss. Dec. 4, 2019); *George*, 2016 WL 94146, at *2. It is critical that, "the nonmoving party must have had an opportunity to discover information necessary to its opposition to the summary judgment motion before summary judgment may be granted." *George*, 2016 WL 94146, at *2; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is limited until there has been "adequate time for discovery"); *Emery v. Medtronic, Inc.*, 793 F. App'x 293, 296 (5th Cir. 2019). As stated by the Eastern District of Louisiana:

Fed.R.Civ.P. 56 presupposes that a party opposing a motion for summary judgment has had an adequate time for discovery of evidence of contradictory facts. Summary judgment is not appropriate until after the plaintiff has had a fair opportunity for discovery of information essential to its opposition to defendant's motion. *Lewis v. Fed. Rsrv. Bank of Atlanta-New Orleans Branch*, No. CIV.A. 04-1452, 2004 WL 2035006, at *4 (E.D. La. Sept. 10, 2004) (citations omitted).

Appellants are entitled to sufficient time to conduct discovery regarding, but not limited to, a complete list of recipients of the Order; dates when the mailing was sent to each recipient; and whether and when defendants had notice that the noticing was overbroad.

Furthermore, Appellants should have been provided an opportunity to determine what steps were taken by Appellees to issue notice of the Trahant Order before the June 13, 2022 status conference. On June 8, 2022, counsel at Jones Walker sought clarification from the Court regarding the service of the Order. ROA.2254. On June 8, 2022, counsel for the Committee also wrote to seek clarification from the Court, stating "The Committee requests an opportunity to discuss with the Court what it sees as issues with the service of the Order on the entire creditor matrix and the prospect of service of the Committee reconstitution notice as a substitute." ROA.2253. On June 9, 2022, the Court's law clerk advised the Committee that the means of service of the Trahant Order would be discussed at the upcoming status conference on June 13, 2022. ROA.2253. Further, on June 9, 2022, the law clerk further advised that, "the Debtor is excused from the three day requirement until after this issue is addressed." ROA.2252.  So clearly, the service instructions contained in the June 7, 2022 Order were neither clear, nor were they the last word on the issue of service.

Also at the June 13, 2022 status conference, the question of service was discussed with the Court. During that conference, Mr. Mintz said, "I know we have done a partial service, but we wanted to wait for your Honor's further order on who serves what, where, to who." ROA.2269. Ultimately, it was decided that the Committee lawyers would serve the abuse survivor constituency; no other

53

instructions were given.  There were no instructions to serve the entire mailing matrix; rather only service on the abuse survivors was discussed.

As pleaded in the Trahants' Petition, none of the individuals who contacted them about having received the June 7, 2022 Order in the mail have *any* pecuniary interest whatsoever that is affected by the Archdiocese's bankruptcy.  Simply stated, there was no reason for these people and entities to receive this Order in the mail.  At the same time, other individuals who <u>are</u> creditors of the Archdiocese bankruptcy were <u>not</u> served with the June 7, 2022 Order, further creating a material issue of fact regarding the makeup of the service list. ROA.2329.

## B. Defendants' "parties in interest" argument fails.

A "party in interest" is defined as "one whose pecuniary interest is directly affected by the bankruptcy proceeding." Black's Law Dictionary 1122 (6th ed.1990). In *In re Testaverde*, 317 B.R. 51 (E.D of NY, 2004) (Hurley, J.) the Court held that a bankruptcy trustee's counsel does not have a pecuniary interest that is directly affected by the bankruptcy proceeding. Rather, the trustee's counsel is an entity hired to assist the trustee, who is the administrator of the debtor's estate. Thus, the plain language of 11 U.S.C. § 326 does not include moneys given to Trustee's counsel.

But more important, as pleaded in the Trahants' Petition, none of the individuals who contacted them about having received the June 7, 2022 Order in the

mail have *any* pecuniary interest whatsoever that is affected by the Archdiocese's bankruptcy.  There was no reason for these people and entities to receive this Order in the mail.

11 U.S.C.A. § 1109 references "a party in interest" within the context of a Chapter 11 bankruptcy, and it undoubtedly <u>does not</u> include people with no connection to the bankruptcy like an eighteen-year-old girl or others who assert to have nothing to do with a bankruptcy.  § 1109 states:

> **(b)** A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

As the United States Ninth Circuit Court of Appeals stated in *In Re Tower Park Properties, LLC*, 803 F.3d 450 (9th Cir. 2015),

> At the same time, we have also recognized that our sister circuits have not interpreted "party in interest" to mean "anyone who might be affected by the bankruptcy proceedings"; rather, a party in interest is one who has a "*legally protected interest* that could be affected by a bankruptcy proceeding." *Id.* (quoting *In re James Wilson Assocs.,* 965 F.2d 160, 169 (7th Cir.1992)) (emphasis added); *see also In re Global Indus. Techs.,* 645 F.3d 201, 210 (3d Cir.2011).[6] Thus, an entity "that may suffer collateral damage" but does not have a legally protected interest does not have standing under § 1109(b). *In re C.P. Hall Co.,* 750 F.3d 659, 661 (7th Cir.2014). Such interests are "too remote to entitle the entity to intervene in a bankruptcy case." *Id.; see* 7 Collier on Bankruptcy ¶ 1109.01[1] ("The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity ... to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest.").

(See also *Truck Insurance Exchange v. Kaiser Gypsum Co., Inc.*, 602 U.S. (2024).[24]

In the case of the people who contacted the Trahants, they fit neither category; they will neither be affected by the Archdiocese bankruptcy, nor do they have a legally protected interest.[25]

Even if these 16,000 plus recipients could be considered "parties in interest," the very bankruptcy order cited by defendants and attached to their removal papers unequivocally <u>does not</u> identify the June 7, 2022 Order as one of the *only* orders that should be served on all "parties in interest." ROA.581-594.

> IT IS FURTHER ORDERED that pursuant to Federal Rule of Bankruptcy Procedure 2002, Local Rule 2002-1, and this Court's Chapter 11 Complex Case Procedures, the Debtor is required to serve the following pleadings on all parties in interest:
>
> a) Notice of the first meeting of creditors pursuant to section 341 of the Bankruptcy Code;
> b) Notice of the time fixed for filing proofs of claim;
> c) Notice of the hearing to consider approval of the disclosure statement and confirmation of a plan;
> d) Notice of the times fixed for filing objections to the disclosure statement and plan;

---

[24] On June 6, 2024, the United States Supreme Court issued its opinion in *Truck Insurance Exchange v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024). The Supreme Court reversed the Fourth Circuit in holding that an insurer with a financial interest in a bankruptcy *was* a "party in interest." Critically, the Court noted, "Of course, a party in interest is 'not intended to include literally every conceivable entity that may be involved in or affected by the chapter 11 proceedings.' 7 Collier on Bankruptcy ¶1109.03." *Id*. p. 15. It is paramount to establish from the outset that many people served with the June 7, 2022 Order were **not** "parties in interest."

[25] Appellants' entire, well-supported "parties in interest" argument was flatly ignored by the Bankruptcy Court and dismissively addressed by the District Court in a footnote that addressed none of the law cited by Appellants. ROA.562, FN 121.

e) Notice of the times fixed to submit ballots for accepting or rejecting the plan;

f) Notice of any hearing on dismissal or conversion of this Chapter 11 Case; and

g) Notice of any proposed sale of all or substantially all of the Debtor's assets;

Neither a contempt order nor an order reconstituting the committee is one that is designated to be served on "all parties in interest." There can be no doubt that Appellees knew this, but they decided to serve this Order so expansively anyway in clear contravention of three separate sets of rules that govern service - - Federal Rule of Bankruptcy Procedure 2002, Local Rule 2002-1 of the E.D. of La, and the Bankruptcy Court's Chapter 11 Complex Case Procedures.

It is also significant that the composition of the Unsecured Creditors' Committee was previously reconstituted by order of the bankruptcy court on February 8, 2021, but the service on that Order was limited as evidenced by the "Certificate of Notice." ROA.2358-2364. Appellees most certainly did not serve this Order on the entire mailing matrix as they did the Order at issue.

Again, at the June 13, 2022 status conference, there was a discussion of the service of the June 7, 2022, Order. Obviously, this was nearly a week after the June 7, 2022 Order's service instructions on which defendants claim to have relied. Had the Bankruptcy Court wanted the Order served on the entire mailing matrix, there would have been no need for a status conference to discuss service. The Bankruptcy

Court and counsel's discussion is located at ROA 2268-2280.  First, if the Order was to be served on the entire matrix, there would have been no need for such a discussion.  Notably, the Bankruptcy Court stated:

> THE COURT: Okay. Well, and just let me preface our conversation by saying this. I know that there's <u>a limit notice order in this case</u> and -- but I -- it was the Court's desire to make sure because this dealt with the composition of the Committee and its large constituency, <u>I just wanted to make sure that, you know, that constituency got served.</u> These are, you know, the Committee represents their interests as a -- as a  -- as a class in this proceeding and I just wanted to make sure that, you know, anybody that was in that constituency got served. <u>And so that's, you know, like I said, despite the limit notice, this one affects them directly and I wanted to make sure that they got notice of that, of the change. So -- but I'm flexible.</u>
> ROA.2269-2270 (Emphasis added).

Because the court was speaking only to counsel for the debtor and the Committee representing abuse-survivors, the bankruptcy court's intention was clearly that the abuse-survivor constituency (at the time approximately 450 people) be served.  At no point did the bankruptcy court instruct anyone to serve the entire mailing matrix.  And at no point during this status conference did Mr. Mintz or Ms. Terry say anything about their intent to serve the entire matrix, which clearly contains the names of at least some abuse survivors.  Nor did Mr. Mintz indicate to the Bankruptcy Court that he believed that serving this Order to what he purported to be "all parties in interest" contradicted Federal Rule of Bankruptcy Procedure

2002, Local Rule 2002-1, and the E.D. of La, Bankruptcy Court's Chapter 11 Complex Case Procedures as discussed above.

This case has nothing to do with the propriety of the Bankruptcy Court's order, but everything to do with how the defendants served that order to publicly shame Mr. Trahant and by extension, his family. Appellees went far astray from how they were directed to serve this order by disseminating it to over 16,000 people and organizations around the world - - something they were not instructed to do by the Bankruptcy Court or allowed to do under the rules.

Appellants are entitled to conduct discovery to determine who was served with the June 7, 2020, on what dates, and by what means. Appellees' self-serving allegations that they followed the order of the Court, as allegedly elucidated by a law clerk via email, is insufficient. Indeed, the email is verified only by the declaration of Brandon Naquin, whose identity in relation to this case and means of personal knowledge with the email is not provided. ROA.2234-2236. There is no evidence in the record of who was served with the Trahant Order. Summary judgment should have been denied as it was grossly premature.

### C. There are Disputed Issues of Material Fact as to Whether Defendants are Entitled to Quasi-Judicial Immunity.

Appellees argued that they were entitled to quasi-judicial immunity, because defendants' actions were performed as "an arm of the court." ROA.2214-2215,

citing *In re Toppin*, 645 B.R. 773, 784 (E.D. Pa. 2020)). Appellees argued that they were "carrying out a court order" and therefore, "acting as an arm of the court," when they served the Order. However, the temporary selection as a trustee of the court for limited purposes does not confer quasi-judicial immunity. See *Auffmordt v. Hedden*, 137 U.S. 310, 327, 11 S. Ct. 103, 108, 34 L. Ed. 674 (1890). Further, the Motion for Summary Judgment should have been denied because there was no discovery permitted to determine whether or not Appellees did, indeed properly comply with the Bankruptcy Court's Order.[26] Appellees cannot simply claim immunity where the crux of the issues in this lawsuit involved whether they properly followed the Court's order. Both the Bankruptcy Court and District Court ignored the fact that serving an order in bankruptcy court is not an activity reserved for any court approved officers or attorneys, and both courts would not acknowledge that Mr. Trahant himself has served pleadings in bankruptcy court.

A finding of bad faith only can be developed through discovery. But the District Court went so far as to write, "Appellees' service of the June 7 Order on the persons listed on the mailing matrix was undertaken in good faith and consistent with the bankruptcy court's instructions, and thus cannot be *ultra vires*." ROA.558.

---

[26] The District Court addressed this issue by writing, "Thus, there can be no doubt that, as Appellees served the June 7 Order at the bankruptcy court's direction and under the court's continued supervision and guidance, they are entitled to derivative absolute judicial immunity." ROA.556. But, as explained in detail herein, Appellees did not serve the Order at the bankruptcy court's direction.

Appellants have alleged and intend to prove through discovery and trial that Appellees undertook this entire service in the utmost of bad faith.

For derived quasi-judicial immunity to apply, the defendants must satisfy four elements: (1) their acts were within the scope of their authority; (2) the debtor had notice of their proposed acts; (3) they candidly disclosed their proposed acts to the bankruptcy court; and (4) the bankruptcy court approved their acts. *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009). Where an official claiming immunity is alleged to have acted outside of the scope of official functions, or exceeded his authority, the doctrine of quasi-judicial immunity does not apply. *See In re Ondova Ltd. Co.*, No. 09-34784-SGJ-7, 2017 WL 477776, at *14 (Bankr. N.D. Tex. Feb. 1, 2017), *report and recommendation adopted*, No. 09-34784-SGJ-7, 2018 WL 580151 (N.D. Tex. Jan. 26, 2018), *aff'd sub nom. Matter of Ondova Ltd. Co.*, 914 F.3d 990 (5th Cir. 2019). *See In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013) (discussing *ultra vires* exception to quasi-judicial immunity). Discovery must be permitted to determine whether such immunity exists. *G & H Dev., LLC v. Penwell*, 9 F. Supp. 3d 658, 668 (W.D. La. 2014) ("Based on the factual allegations highlighted above and noting that G & H's factual allegations must be construed liberally, this Court finds that affording absolute immunity is not appropriate at this stage of the litigation. After

the benefit of discovery, the parties may revisit the issue of immunity, whether it be absolute or qualified, in the form of a Rule 56 motion for summary judgment.").[27]

Here, there are contested issues of material fact about whether Appellees' acts were within the scope of their authority, and whether those actions were disclosed or approved by the Bankruptcy Court. Again, Federal Rule of Bankruptcy Procedure 2002 provides the circumstances and timing under which notice should be given to parties in interest in a bankruptcy proceeding. Likewise, the *Ex Parte Order Authorizing the Debtor to Limit Notice and Establishing Notice Procedures* specifically provides the type of pleadings that are required to be served on all parties in interest under Federal Rule of Bankruptcy Procedure 2002, Local Rule 2002-1, and the Bankruptcy Court's Chapter 11 Complex Case Procedures. ROA.2238. A review of these seven categories of pleadings that are authorized to be served on all parties in interest clearly demonstrates that the Trahant Order was not included on the list.

It is uncontested that these categories of pleadings that must be served on all parties in interest do not include pleadings such as the Trahant Order. The Trahant Order does not even arguably fit under any of these categories, and, notably, Rule 2002 was not even mentioned in Appellees' Motion for Summary Judgment.

---

[27] Application of these holdings alone should have prevented the granting of summary judgment.

Appellees, who are highly experienced professionals in the bankruptcy area, were well aware that service of the Trahant Order on the entire mailing matrix was improper, as illustrated by the email sent to the law clerk to verify the means of service. ROA.2250. Further, upon receiving the law clerk's response, Mr. Mintz found it advisable to request that he be relieved from serving the order pending further discussions, again demonstrating his knowledge that service of the Trahant Order on the entire mailing matrix was procedurally improper. ROA.2252. These are more genuine issues of material fact that preclude summary judgment.

Nevertheless, despite Appellees' obvious reservations and clear knowledge of the bankruptcy rules and court orders, the question of who should receive service of the Trahant Order was not specifically answered at the Status Conference on June 13, 2022. ROA.745.

Furthermore, the Order granting summary judgment fails to even address the fact that the service of the Trahant Order on the entire mailing matrix directly controverted Rule 2002, Local Rule 2002-1, and the *Ex Parte* Order's directive about service, instead, speciously concluding that the Order was clear and included service on the entire mailing matrix when these instructions simply do not exist.

There are numerous contested issues of material fact about whether Appellees followed Court orders, or knowingly circumvented those procedures in an *ultra vires* manner by sending the Trahant Order to the entire mailing matrix, and to people who

have no involvement in the bankruptcy. Therefore, Appellees were not entitled to summary judgment based on quasi-judicial immunity, and the Motion for Summary Judgment should have been denied.

## CONCLUSION

For all of the foregoing reasons, this Court should VACATE the orders granting jurisdiction to the Bankruptcy Court, REVERSE the orders on remand, recusal, and summary judgment. And this case should be remanded to state court.

Respectfully submitted,

**THE TRUITT LAW FIRM**
A Limited Liability Company

*/S/ Jack E. Truitt*
JACK E. TRUITT, BAR NO. 18476, T.A.
MICHELLE MAYNE DAVIS, BAR NO. 23027
KAYLIN K. STOREY, BAR NO. 39721
LOU ANNE MILLIMAN, BAR NO. 23869
1321 Ochsner Boulevard, Suite 200
Covington, Louisiana 70433
Telephone: (985) 327-5266
Facsimile: (985) 327-5252
Email: mail@truittlaw.com

*Attorneys for Appellants*
*Richard C. Trahant and*
*Amy O. Trahant*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION,
## <u>TYPEFACE REQUIREMENT, AND TYPE STYLE REQUIREMENT</u>

This appellant's principal brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A), as enlarged by this Court's Order dated June 12, 2025 granting "the motion to file Appellant's brief in excess of word count limitation but not to exceed 16,250 words" (Doc. 41), because it contains <u>16,090</u> words, as determined by the word-count function of Microsoft Word, *excluding* parts exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Fifth Circuit Rule 32.2.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Corel WordPerfect 2020 in 14-point Times New Roman font.

| | |
|---|---|
|    8-12-25 | */S/ Jack E. Truitt* |
| **Date** | JACK E. TRUITT |

## <u>CERTIFICATE OF SERVICE</u>

I, Jack E. Truitt, certify that on August 12, 2025 I electronically filed the foregoing "Appellants' Principal Brief" with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to those participants in the CM/ECF filing system.

*/s/ Jack E. Truitt*
JACK E. TRUITT
