No. 25-30193

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

IN THE MATTER OF ROMAN CATHOLIC CHURCH OF THE
ARCHDIOCESE OF NEW ORLEANS, *Debtor*

v.

RICHARD TRAHAN, AMY TRAHANT, *Appellants*

v.

ROMAN CATHOLIC CHURCH OF THE ARCHDIOCESE OF NEW ORLEANS,
MARK ALAN MINTZ, JONES WALKER, L.L.P., DONLIN RECANO &
COMPANY, INCORPORATED, *Appellees*

_____

On Appeal from the United States District Court, Eastern District of Louisiana, No.
2:24-cv-1873, Honorable Barry W. Ashe, Presiding

_____

## BRIEF OF DEFENDANTS-APPELLEES
## MARK A. MINTZ, JONES WALKER LLP, AND
## DONLIN RECANO & COMPANY, INC.

_____

Richard C. Stanley
Kathryn W. Munson
Brandon A. Naquin
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112

*Counsel for Mark A. Mintz, Jones
Walker LLP, and Donlin Recano &
Company, Inc.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellees Mark A. Mintz, Jones Walker LLP, and Donlin Recano & Company, Inc., certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Mark A. Mintz | Richard C. Stanley<br>Kathryn W. Munson<br>Brandon A. Naquin<br><br>STANLEY REUTER ALFORD<br>  OWEN MUNSON & PAUL, LLC |
| Jones Walker LLP | Richard C. Stanley<br>Kathryn W. Munson<br>Brandon A. Naquin<br><br>STANLEY REUTER ALFORD<br>  OWEN MUNSON & PAUL, LLC |
| Donlin Recano & Company, Inc. | Richard C. Stanley<br>Kathryn W. Munson<br>Brandon A. Naquin<br><br>STANLEY REUTER ALFORD<br>  OWEN MUNSON & PAUL, LLC |

| Appellants: | Counsel for Appellants: |
|---|---|
| Richard C. Trahant | Jack E. Truitt<br>Michelle Mayne Davis<br>Kaylin K. Storey<br>Lou Anne Milliman<br><br>THE TRUITT LAW FIRM |
| Amy O. Trahant | Jack E. Truitt<br>Michelle Mayne Davis<br>Kaylin K. Storey<br>Lou Anne Milliman<br><br>THE TRUITT LAW FIRM |

| Debtor: | Counsel for Debtor: |
|---|---|
| Roman Catholic Church of the Archdiocese of New Orleans | R. Patrick Vance<br>Elizabeth J. Futrell<br>Edward D. Wegmann<br>Mark A. Mintz<br>Allison B. Kingsmill<br>Samantha A. Oppenheim<br><br>JONES WALKER LLP<br><br>James R. Murray<br><br>BLANK ROME LLP |

/s/ Richard C. Stanley
Counsel for Mark A. Mintz,
Jones Walker LLP, and
Donlin Recano & Company, Inc.

## STATEMENT REGARDING ORAL ARGUMENT

The Plaintiffs-Appellants have requested oral argument. The Defendants-Appellees Mark A. Mintz, Jones Walker LLP, and Donlin Recano & Company, Inc. do not believe oral argument is necessary. The district court affirmed the bankruptcy court's jurisdiction and dismissal of the Trahants' claims based on a straightforward application of the *Barton* doctrine and because the Appellees also enjoy derivative absolute judicial immunity for their actions taken as an arm of the bankruptcy court under the supervision and subject to the orders of the bankruptcy judge. The district court affirmed the bankruptcy court's decision not to recuse because there was no factual or legal basis supporting recusal. This appeal is frivolous under Rule 38 of the Federal Rules of Appellate Procedure, and oral argument is therefore unnecessary.

In the event this Court grants the Appellants' request for oral argument, the Appellees request the opportunity also to present argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS ........................................................................................ iv

TABLE OF AUTHORITIES .................................................................................. vii

INTRODUCTION ................................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................................ 2

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................................... 3

STANDARD OF REVIEW .................................................................................... 4

STATEMENT OF THE CASE ............................................................................... 5

I.　　The Bankruptcy Court authorized both the Mailing Matrix and the Special Notice List .......................................................................... 5

II.　　The Bankruptcy Court appointed DRC to serve as the Debtor's Claims and Notice Agent and authorized the Debtor's indemnification of DRC ........................................................................ 6

III.　　The Bankruptcy Court issued the Trahant Order, and the Appellees served that Order based on the Bankruptcy Court's instructions ............................................................................... 7

IV.　　The Trahants filed this lawsuit based on the allegation that the Appellees should not have served the Trahant Order on the Mailing Matrix or, relatedly, that the Mailing Matrix is faulty ............ 9

V.　　The District Court referred the Trahants' suit to the Bankruptcy Court "for all purposes" ........................................................................ 11

VI.　　The Bankruptcy Court found the Trahants' § 144 Affidavit and Motion to Recuse meritless ................................................................. 12

VII.　The Bankruptcy Court denied the Trahants' Motion to Remand because the Petition implicates the *Barton* doctrine and constitutes a core proceeding arising from the Appellees' roles as the Debtor's professionals in the Chapter 11 Case ............................13

VIII.　The Bankruptcy Court granted the Appellees' Motion for Summary Judgment.............................................................................14

IX.　The Trahants appealed the Bankruptcy Court's orders denying the Trahants' motion to recuse the bankruptcy judge, denying the Trahants' motion for remand, and granting summary judgment in favor of the Appellees, and the District Court affirmed.................15

SUMMARY OF THE ARGUMENT ......................................................17

ARGUMENT ........................................................................................19

I.　The District Court did not abuse its discretion when it referred the Trahants' Petition to the Bankruptcy Court...................................19

II.　The District Court correctly affirmed the Bankruptcy Court's Order denying the Trahants' Recusal Motions....................................21

　　A.　The Trahants' recusal argument fails because the substantive orders that were part of the district court's appeal were reviewed *de novo* ..................................................21

　　B.　There was no basis for recusal, and the Bankruptcy Court did not abuse its discretion by declining to recuse ...................21

　　　　1.　Section 144 Affidavit.......................................................22

　　　　2.　28 U.S.C. § 455............................................................23

III.　The District Court committed no error by denying the Trahants' improper Motion to Recuse the District Court Judge .........31

IV.    The District Court correctly affirmed the bankruptcy court's
order denying the Trahants' Motion to Remand ..................................33

    A.    The Bankruptcy Court correctly held that bankruptcy
jurisdiction exists under 28 U.S.C. § 1334(b)...........................33

    B.    The *Barton* doctrine confirms that no other court would
have jurisdiction over the Trahants' claims ..............................36

    C.    Mandatory Abstention is not applicable ...................................38

    D.    The Bankruptcy Court did not abuse its discretion in
declining to exercise permissive abstention.............................42

V.    The Bankruptcy Court's Summary Judgment Dismissing the
Trahants' claims also was correct.........................................................44

    A.    The Bankruptcy Court correctly held that the Appellees
are entitled to immunity because the Trahants' claims are
based on actions taken as an arm of the court and in
compliance with a facially valid court order ............................44

    B.    The Appellees' Motion for Summary Judgment was
not premature, as the discovery requested could not change
the result ....................................................................................52

CONCLUSION ....................................................................................................53

CERTIFICATE OF SERVICE ............................................................................55

CERTIFICATE OF COMPLIANCE ...................................................................56

CERTIFICATE OF ELECTRONIC COMPLIANCE ...........................................56

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Am. Family Life Assurance Co. of Columbus v. Biles*,
   714 F.3d 887 (5th Cir. 2013)..........................................................52

*Andrade v. Chojnacki*,
   338 F.3d 448 (5th Cir. 2003)............................................25, 26, 29

*Barton v. Barbour*,
   104 U.S. 126 (1881)..............................................................*passim*

*Baton Rouge Ventures, LLC v. Cedar Grove Cap., LLC*,
   No. CV 20-628, 2022 WL 4474158 (M.D. La. Sept. 26, 2022)....................51

*Bd. of Comm'rs of Se. La. Flood Protection Auth. v. Tenn. Gas Pipeline Co.*,
   850 F.3d 714 (5th Cir. 2017)..........................................................14

*Benta v. Christie's, Inc.*,
   No. 2013-cv-0080, 2021 WL 2546453 (D.V.I. June 21, 2021)....................38

*Bolin v. Story*,
   225 F.3d 1234 (11th Cir. 2000)......................................................46

*Boullion v. McClanahan*,
   639 F.2d 213 (5th Cir. 1981)..........................................................47

*Bradford Audio Corp. v. Pious*,
   392 F.2d 67 (2d Cir. 1968)............................................................45

*Brown v. City of Houston*,
   337 F.3d 539 (5th Cir. 2003)...........................................................5

*Brown v. City of Griesenauer*,
   970 F.2d 431 (8th Cir. 1992)..........................................................47

*Buckley v. Fitzsimmons*,
   509 U.S. 259 (1993)...................................................................45

*Burch v. Freedom Mortg. Corp. (In re Burch)*,
 No. 20-10498, 835 F. App'x 741 (5th Cir. 2021) ...........................................43

*Bush v. Rauch*,
 38 F.3d 842 (6th Cir. 1994)....................................................................45, 48, 49

*Castro v. McCord*,
 259 F. App'x 664 (5th Cir. 2007).....................................................................25

*Celotex Corp. v. Edwards*,
 514 U.S. 300 (1995)......................................................................................10, 50

*Chua v. Ekonomou*,
 1 F.4th 948 (11th Cir. 2021)..............................................................................46

*Citrano v. Allen Correctional Center*,
 891 F. Supp. 312 (W.D. La. 1995)....................................................................45

*Cleavinger v. Saxner*,
 474 U.S. 193 (1985)...........................................................................................47

*Coverdell v. Department of Social and Health Servs.*,
 834 F.2d 758 (9th Cir. 1987)......................................................................45, 48

*Danielson v. Winnfield Funeral Home of Jefferson, Inc.*,
 634 F. Supp. 1110 (E.D. La. 1986) ...................................................................22

*Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*,
 517 F.2d 1044 (5th Cir. 1975)...........................................................................28

*Doe v. Roman Cath. Church of Archdiocese of New Orleans*,
 588 F. Supp. 3d 717 (E.D. La. 2022)...................................................24, 29, 42

*Dominick v. Mayorkas*,
 52 F.4th 992 (5th Cir. 2022)................................................................................5

*Galloway v. Bond, Botes & Stover, P.C.*,
 597 F. Supp. 2d 676 (S.D. Miss. 2008) ......................................................34, 39

*Hadi v. McCune Wright Arevalo LLP*,
　　No. 18-05104, 2018 WL 6675622 (C.D. Cal. Dec. 17, 2018) ......................36

*Henderson v. Dep't of Public Safety & Corrections*,
　　901 F.2d 1288 (5th Cir. 1990)........................................................................23

*Henry v. Farmer City State Bank*,
　　808 F.2d 1228 (7th Cir. 1986)........................................................................45

*Hepperle v. Johnston*,
　　590 F.2d 609 (5th Cir. 1979)..........................................................................22

*Holland America Ins. Co. v. Succession of Roy*,
　　777 F.2d 992 (5th Cir. 1985)............................................................12, 19, 20

*Hughes v. Chevron* h *Chem. Co. LP*,
　　478 F. App'x 167 (5th Cir. 2012)..............................................................39, 40

*In re Bissonnet Investments LLC*,
　　320 F.3d 520 (5th Cir. 2003)............................................................................4

*In re Burch*,
　　835 F. App'x 741 (5th Cir. 2021) ..............................................................11, 43

*In re Cruz*,
　　562 B.R. 812 (Bankr. M.D. Fla. 2016) ..........................................................37

*In re DeLorean Motor Co.*,
　　991 F.2d 1236 (6th Cir. 1993)........................................................................46

*In re Fort Worth Osteopathic Hospital, Inc.*,
　　406 B.R. 741 (N.D. Tex. 2009)..................................................................39, 41

*In re Foster*,
　　Adv. No. 19-04131, 2020 WL 612915
　　(Bankr. N.D. Tex. Oct. 15, 2020)..............................................................42, 43

*In re Foster*,
　　No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023)..........................*passim*

*In re Galaz*,
    841 F.3d 316 (5th Cir. 2016)..............................................................34

*In re Gulph Woods Corp.*,
    84 B.R. 961 (Bankr. E.D. Pa. 1988) ...............................................23

*In re Juravin*,
    No. 22-11356, 2024 WL 4677417 (11th Cir. Nov. 5, 2024)..................46, 47

*In re Lowenbraun*,
    453 F.3d 314 (6th Cir. 2006)......................................................35, 39

*In re McKenzie*,
    716 F.3d 404 (6th Cir. 2013)..............................................................37

*In re Mirant Corp.*,
    197 Fed. App'x 285 (5th Cir. 2006) ...............................................19

*In re Preferred Ready-Mix, LLC*,
    660 B.R. 214 (S.D. Tex. 2024) ........................................................37

*In re Promise Healthcare Grp., LLC*,
    No. 18-12491, 2023 WL 3026715 (Bankr. D. Del. Apr. 20, 2023)...12, 20, 33

*In re Repository Techs., Inc.*,
    601 F.3d 710 (7th Cir. 2010)..............................................................35

*In re Roman Catholic Church of the Archdiocese of New Orleans*,
    Bankr. Case No. 20-10846......................................................5, 21

*In re Roman Catholic Church of Archdiocese of New Orleans*,
    652 B.R. 138 (E.D. La. 2023)...........................................................21

*In re Southmark Corp.*,
    163 F.3d 925 (5th Cir. 1999)......................................................35, 40

*In re Summit Metals, Inc.*,
    477 B.R. 484 (D. Del. 2012)......................................................45, 47

*In re Texxon Petrochems, L.L.C.*,
    67 F.4th 259 (5th Cir. 2023)..............................................................31

*In re Toppin*,
    645 B.R. 773 (E.D. Pa. 2022)........................................................45

*In re TXNB Internal Case*,
    483 F.3d 292 (5th Cir. 2007)...........................................................38

*Jacuzzi v. Pimieta*,
    762 F.3d 419 (5th Cir. 2014)...................................................14, 40

*Jones v. King*,
    701 F. Supp. 3d 552 (W.D. Tex. 2023) .........................................53

*Jones v. King*,
    148 F.4th 296 (5th Cir. 2025)..........................................................53

*Kemp ex rel. Kemp v. Perkins*,
    324 F. App'x 409 (5th Cir. 2009)...................................................44

*Lawrence v. Goldberg*,
    573 F.3d 1265 (11th Cir. 2009)................................................36, 46

*Liteky v. U.S.*,
    510 U.S. 540 (1994)...........................................................22, 25, 28

*Marren v. Stout*,
    930 F. Supp. 2d 675 (W.D. Tex. 2013) ...................................40, 41

*Matter of Dallas Roadster, Limited*,
    846 F.3d 112 (5th Cir. 2017).............................................................4

*Matter of Howe*,
    913 F.2d 1138 (5th Cir. 1990)...........................................................4

*Matter of Lieb*,
    915 F.2d 180 (5th Cir. 1990)..........................................................19

*Matter of Ondova Limited Company*,
   914 F.3d 990 (5th Cir. 2019)..............................................................45, 46, 50

*Matter of Pendergraft*,
   745 F. App'x 517 (5th Cir. 2018)....................................................................4

*Matter of Topco*,
   894 F.2d 727 (5th Cir. 1990)..........................................................................31

*Mays v. Sudderth*,
   97 F.3d 107 (5th Cir. 1996).................................................................45, 49, 50

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*,
   25 F.4th 360 (5th Cir. 2022)..........................................................................52

*Melendres v. Arpaio*,
   No. 07-cv-2513. 2015 WL 13173306 (D. Ariz. July 10, 2015) ...................30

*Mendez v. Poitevent*,
   823 F.3d 326 (5th Cir. 2016)..........................................................................52

*Mireles v. Waco*,
   502 U.S. 9 (1991)...........................................................................................53

*Moore v. Taylor*,
   541 So. 2d 378 (La. App. 2 Cir. 1989) ..........................................................44

*Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v.
   Grant Thornton, L.L.P.*, 351 B.R. 430 (Bankr. W.D. Tex. 2006) .................43

*Palowsky v. Campbell*,
   285 So. 3d 466 (La. 6/29/19)..........................................................................44

*Patterson v. Movil Oil Corp.*,
   335 F.3d 476 (5th Cir. 2003)..........................................................................21

*Patterson v. Von Risen*,
   999 F.2d 1235 (9th Cir. 1993).........................................................................45

*Paul Kadair, Inc. v. Sony Corp. of America*,
    694 F.2d 1017 (5th Cir. 1983)............................................................53

*Poincon v. Offshore Marine Contractors, Inc.*,
    9 F.4th 289 (5th Cir. 2021)...............................................................51

*Property Management & Invs., Inc. v. Lewis*,
    752 F.2d 599 (11th Cir. 1985)...........................................................45

*Robinson v. Orient Marine Co.*,
    505 F.3d 364 (5th Cir. 2007).............................................................5

*Roland v. Phillips*,
    19 F.3d 552 (11th Cir. 1994).............................................................48

*Sacerdote v. New York Univ.*,
    No. 16-cv-6284, 2019 WL 2763922 (S.D.N.Y. July 1, 2019)......................30

*Sanders v. Christwood, L.L.C.*,
    No. 17-cv-9733, 2020 WL 7417995 (E.D. La. Dec. 18, 2020)..............18, 28

*San Paulo of Federative Rep. of Brazil v. Am. Tobacco Co.*,
    535 U.S. 229 (2002).........................................................................25

*Satterfield v. Malloy*,
    700 F.3d 1231 (10th Cir. 2012)..........................................................38

*Schuster v. Mims (In re Rupp & Bowman)*,
    109 F.3d 237 (5th Cir. 1997).............................................................38

*Sharp v. Palmisano*,
    No. 13-5429, 2013 WL 5969661 (E.D. La. Nov. 8, 2013)...........................44

*Singh v. Duane Morris LLP*,
    538 F.3d 334 (5th Cir. 2008).........................................................40, 41

*Slotnick v. Garfinkle*,
    632 F.2d 163 (1st Cir. 1980).............................................................45

*Tarter v. Hury*,
    646 F.2d 1010 (5th Cir. 1981)........................................................45

*Tenn. Gas*,
    850 F.3d 721 ...............................................................................40

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)....................................................................43

*Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*,
    38 F.3d 1404 (5th Cir. 1994).......................................................30

*Trinh v. Fineman*,
    9 F.4th 235 (3rd Cir. 2021) .........................................................45

*United States v. Avilez-Reyes*,
    160 F.3d 258 (5th Cir. 1998).......................................................25

*United States v. Champlin*,
    388 F. Supp. 2d 1177 (D. Haw. 2005) .........................................24

*United States v. Jordan*,
    49 F.3d 152 (5th Cir. 1995).........................................................25

*United States v. Liggins*,
    76 F.4th 500 (6th Cir. 2023)..................................................27, 28

*United States v. Zagari*,
    419 F. Supp. 494 (N.D. Cal. 1976) ..............................................28

*Valdez v. County of Denver*,
    878 F.2d 1285 (10th Cir. 1989)..............................................45, 48

*Webb v. City of Maplewood*,
    889 F.3d 483 (8th Cir. 2018).......................................................45

## **RULES**

Fed. R. Evid. 701 ...................................................................................31

Fed. Rule Civ. Proc. 56(a)........................................................................5, 51

Fed. Rule Civ. Proc. 56(d)..........................................................5, 15, 52, 53

L.R. 83.4.1......................................................................................2, 11, 19

L.R. 2002-1 .................................................................................................9

L.R. Bankr. § 1007(a)..................................................................................5

L.R. Bankr. § 1007-2.............................................................................6, 50

L.R. Bankr. § 1107(a)................................................................................47

L.R. Bankr. § 1108 ......................................................................................5

## **STATUTES**

11 U.S.C. § 1107(a)...................................................................................35

28 U.S.C. § 47 .....................................................................................16, 31

28 U.S.C. § 144 ..................................................................................*passim*

28 U.S.C. § 156(c) ......................................................................................6

28 U.S.C. § 157 .........................................................................................31

28 U.S.C. § 157(a) ..........................................................................2, 17, 19

28 U.S.C. § 157(b) ...............................................................................20, 34

28 U.S.C. § 158 ...............................................................................3, 31, 32

28 U.S.C. § 158(a) ...............................................................................2, 31

28 U.S.C. § 158(d) ......................................................................................2

28 U.S.C. § 455..............................................................16, 22, 23, 28

28 U.S.C. § 959(a) ..............................................................................37

28 U.S.C. § 1334.........................................................................*passim*

## **OTHER**

General Order 2021-5 ...................................................................2, 11, 19

## INTRODUCTION

This case arises from the administration of the Chapter 11 bankruptcy of the Roman Catholic Church of the Archdiocese of New Orleans ("Archdiocese" or "Debtor"). More specifically, the Plaintiffs/Appellants (the "Trahants") filed a state court petition alleging that counsel for the Archdiocese and its notice agent for service of process committed various state law torts when, in compliance with the orders of the bankruptcy court, they served a public Order entered by the bankruptcy court on the court-approved official mailing matrix in that case. The Appellees timely removed the state court lawsuit on several grounds, including as an action arising in or related to the pending Chapter 11 bankruptcy. The Trahants responded by attacking the jurisdiction of the federal courts, seeking to recuse both the bankruptcy judge and the district court judge, arguing that a remand was required to allow the state court to interpret the propriety of service of a public bankruptcy court Order, and resisting summary judgment when the undisputed facts demonstrated that they had no legitimate claim for relief.

Despite the number and length of the Trahants' arguments on appeal, they are meritless. *First*, the federal courts plainly have jurisdiction over claims that arise in or relate to bankruptcy proceedings. *Second*, despite the devotion of the majority of the Trahants' argument to recusal issues, there was no legitimate basis for recusal of either the bankruptcy judge once the Trahants' lawsuit was referred or the district court judge when the Trahants appealed the bankruptcy court's judgments and orders. *Third*, there was no basis to remand this matter for a state court or jury to interpret federal court orders to determine whether counsel following those orders

did so properly. *Fourth*, summary judgment plainly was appropriate when the record established that the Appellees followed federal court orders on service of a public bankruptcy Order and then executed those instructions as officers of the court. Indeed, as the bankruptcy court explained in granting summary judgment in favor of the Appellees:

> At that [June 13, 2022] hearing, the Court stated its intention, as instructed in the text of the June 7, 2022 Order, for the Order [to] be served on the entire Mailing Matrix and that service not be limited to the Limit-Notice Order. The Court explained that its findings contained in the Order broadly affected the Committee's constituency and other parties' interests in the case and, therefore, the [Order] warranted service to the entire Mailing Matrix.[1]

Accordingly, the district court's judgment affirming the bankruptcy court's judgments and orders should be affirmed in all respects.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1334[2] and properly referred this case to the bankruptcy court under 28 U.S.C. 157(a), Eastern District Local Rule 83.4.1, and General Order 2021-5.[3] The district court properly exercised its appellate jurisdiction under 28 U.S.C. § 158(a)(1) for the Trahants' initial appeal of the bankruptcy court's judgments and orders. This Court has jurisdiction under 28 U.S.C. § 158(d)(1) because the Trahants timely appealed the district court's March 5, 2025 Opinion affirming the bankruptcy court's judgments and orders denying the

---

[1] ROA.2456, Memorandum Opinion and Order at 13 (citing ROA.2256, Transcript of June 13, 2022 Hearing).
[2] ROA.62-64, Memorandum Opinion and Order at 9–11.
[3] ROA.828-31, Order & Reasons at 5–8.

Trahants' motion to recuse the bankruptcy judge, denying the Trahants' motion for remand, and granting summary judgment in favor of the Appellees.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

(1) Did the district court abuse its discretion by referring the Trahants' lawsuit to the bankruptcy court when the Plaintiffs' claims arise in or—at minimum—were related to the Chapter 11 bankruptcy case for the Archdiocese?

(2) Did the district court abuse its discretion by denying the Trahants' 28 U.S.C. § 144 affidavit and motion to recuse the bankruptcy judge, when Section 144 does not apply to bankruptcy judges, and Section 144 affidavits and motions must be filed before the judge sought to be recused?

(3) Did the district court err in declining to disqualify itself when the basis of the request for disqualification was the Trahants' improper attempt to appeal the district court's orders back to itself in contravention of appellate procedure and the limitations of 28 U.S.C. § 158?

(4) Did the district court err in affirming the bankruptcy court's order denying the Trahants' motion to recuse the bankruptcy judge when there was no factual or legal basis justifying recusal and no well-informed, thoughtful, and objective observer would question Judge Meredith Grabill's impartiality?

(5) Did the district court err in affirming the bankruptcy court's order denying the Trahants' motion for remand when the Trahants' suit constituted a core proceeding because the claims asserted by the Trahants "could not exist outside of the bankruptcy context," and the bankruptcy court has exclusive jurisdiction to authorize the suit under the *Barton* doctrine?

3

(6) Did the district court err in affirming the bankruptcy court's order granting summary judgment in favor of Appellees, when (1) the Trahants' claims were (a) barred by the *Barton* doctrine, and (b) those claims were based on actions taken by the Appellees as "arms of the court" subject to the bankruptcy court's continued supervision and guidance, and thereby protected by derivative judicial immunity; and (2) the discovery sought by the Trahants would not have changed the determination of derivative absolute judicial immunity?

## STANDARD OF REVIEW

The district court and bankruptcy court's orders denying the Trahants' 28 U.S.C. § 144 Affidavit and motion to recuse are reviewed for an abuse of discretion. *Matter of Pendergraft*, 745 F. App'x 517, 520 (5th Cir. 2018) ("We review the denial of a motion to recuse for abuse of discretion.").

Determinations of jurisdiction (including the district court's reference order and bankruptcy court's denial of the Trahants' Motion for Remand) are reviewed *de novo*, *see In re Bissonnet Investments LLC*, 320 F.3d 520, 522 (5th Cir. 2003) ("We review questions of subject matter jurisdiction *de novo*."), while the denial of the Trahants' request for permissive abstention is reviewed for an abuse of discretion. *See Matter of Howe*, 913 F.2d 1138, 1143 (5th Cir. 1990).

The bankruptcy court's Order granting the Appellees' motion for summary judgment and dismissing the Trahants' claims is reviewed *de novo*. *Matter of Dallas Roadster, Limited*, 846 F.3d 112, 123 (5th Cir. 2017) ("A grant of summary judgment is reviewed *de novo*, applying the same standard on appeal that is applied by the district court.") (quotations omitted). Summary judgment is appropriate if the record

evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Robinson v. Orient Marine Co.*, 505 F.3d 364, 366 (5th Cir. 2007); FED. R. CIV. P. 56(a). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment. *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Reasonable inferences must be drawn in favor of the non-moving party. *Robinson*, 505 F.3d at 366.

The bankruptcy court's denial of the Trahants' request for additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure is reviewed for abuse of discretion. *See Dominick v. Mayorkas*, 52 F.4th 992, 995 (5th Cir. 2022) ("We review a district court's denial of a Rule 56(d) motion for abuse of discretion."). "Rule 56 does not require that any discovery take place before summary judgment can be granted . . . ." *Id.* (quotations omitted).

## STATEMENT OF THE CASE

### I.     The Bankruptcy Court authorized both the Mailing Matrix and the Special Notice List.

The Roman Catholic Church of the Archdiocese of New Orleans ("Archdiocese" or "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in May 2020.[4] The Debtor has remained in possession of its property and is managing its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. Jones Walker LLP ("Jones Walker")

---

[4] The Archdiocese's bankruptcy case is designated as *In re Roman Catholic Church of the Archdiocese of New Orleans*, Case No. 20-10846 ("Chapter 11 Case").

and Mark A. Mintz ("Mr. Mintz") have represented the Debtor in the Chapter 11 Case since its inception.

Under Rule 1007-2 of the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Louisiana, bankruptcy petitioners must "file a complete mailing matrix containing the correct name and address of all known creditors and other parties in interest" ("Mailing Matrix"). Early on, with the bankruptcy court's authorization (and with no objection from the Trahants), the Debtor filed under seal an unredacted Mailing Matrix. The Mailing Matrix is the definitive list of the "parties in interest" for purposes of service. Bankr. L.R. 1007-2 (E.D. La.).

Because of the large number of interested parties potentially affected by the Chapter 11 Case, the Mailing Matrix includes thousands of individuals. Thus, on May 1, 2020, the bankruptcy court entered an order authorizing the use of a more limited Special Notice List ("Special Notice List Order") for matters that did not require notice to the full Mailing Matrix.[5] The bankruptcy court retained jurisdiction to "determine all matters arising from or related to the implementation, interpretation, or enforcement of this [Special Notice List] Order."[6]

## II.    The Bankruptcy Court appointed DRC to serve as the Debtor's Claims and Notice Agent and authorized the Debtor's indemnification of DRC.

In June 2020, the bankruptcy court issued a Final Order Appointing Donlin, Recano & Company, Inc. as Claims and Noticing Agent for the Debtor Pursuant to 28 U.S.C § 156(c), *Nunc Pro Tunc* to the Petition Date ("DRC Appointment

---

[5] ROA.2237, Special Notice List Order.
[6] ROA.2239, *id.* at 3.

Order").[7] The DRC Appointment Order authorized the Debtor to retain Donlin, Recano & Company, Inc. ("DRC") and directs DRC to "provide notice and service of pleadings, orders, and notices limited to those matters formally filed on the docket of this Case."[8] The DRC Appointment Order further provides that the "Debtor shall indemnify DRC under the terms of the Engagement Agreement. All requests by DRC for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court."[9] The bankruptcy court has "retain[ed] jurisdiction and power with respect to all matters arising from or related to the implementation of this [DRC Appointment] Order."[10]

### III.   The Bankruptcy Court issued the Trahant Order, and the Appellees served that Order based on the Bankruptcy Court's instructions.

On June 3, 2022, the Acting United States Trustee ("U.S. Trustee") filed a Statement of Position Concerning Violations of the Protective Order based on the U.S. Trustee's findings about Mr. Trahant's conduct in the Chapter 11 Case. On June 7, 2022, the bankruptcy court issued an order responding to the U.S. Trustee's Statement of Position ("Trahant Order").[11] The Trahant Order directed the U.S. Trustee to relieve Mr. Trahant's clients from service as members of the Official Committee of Unsecured Creditors ("Committee").

The Trahant Order's service instructions expressly ordered "counsel for the Debtor" to serve the "Order via first-class U.S. Mail on those parties in interest who

---

[7] ROA.2240, DRC Appointment Order.
[8] ROA.2241, *id.* at 2.
[9] ROA.2243, *id.* at 4.
[10] ROA.2244, *id.* at 5.
[11] ROA.2245, Trahant Order.

will not receive service via this Court's CM/ECF system."[12] Further communications among the Court and counsel for the U.S. Trustee, the Committee, and the Debtor, respectively, confirmed that the Trahant Order's instruction relative to serving all "parties in interest" was intentional. Shortly after the Trahant Order issued, Jones Walker emailed the bankruptcy court's law clerk, with a copy to counsel for the Committee and the U.S. Trustee. The email inquired:

> I am writing to seek some clarification regarding the Court's Order in Response to UST Report, which was entered yesterday at ECF No. 1574.
>
> The second-to-last paragraph states that the Order is to be served "via first-class U.S. Mail on those parties in interest who will not receive service via this Court's CM/ECF system." Do you know if it was the Court's intention that the Order be served on all parties in interest who will not receive service via the CM/ECF system, or rather, only on those parties identified in the Special Notice List [ECF No. 22] who will not receive service via the CM/ECF system?[13]

The law clerk's response confirmed that the service instructions should be followed precisely as written:

> Please serve the Order on all parties in interest who will not receive service via the CM/ECF system. Do not limit it to the parties identified in the Special Notice List, [ECF Doc. 22].[14]

Consistent with the court's instructions, and with the knowledge of counsel for the Committee, the Trahant Order was served on the Mailing Matrix as the complete list of all "parties in interest."

---

[12] ROA.2249, *id.* at 5.
[13] ROA.2250, Email from Ms. Oppenheim to chambers (June 8, 2022, 9:18 A.M.).
[14] ROA.2250, Email from Chambers to Ms. Oppenheim (June 8, 2022, 9:49 A.M.).

After the Trahant Order issued, counsel for the Committee suggested that perhaps the Committee Reconstitution Notice could be served on the Mailing Matrix, rather than the Trahant Order.[15] The Court agreed to discuss this suggestion during a status conference on June 13, 2022.[16] At the conference, counsel for the Committee explained that they were concerned about serving the Trahant Order on the entire Mailing Matrix because the order specifically named the creditors whom Mr. Trahant represented, such that it would increase the visibility of those creditors' names.[17] To address that concern, the bankruptcy court authorized the redaction of those creditors' names prior to further service of the Trahant Order.[18] The bankruptcy court also authorized the Committee, rather than DRC, to serve the Trahant Order on the sexual abuse claimants.[19] During the colloquy, the bankruptcy court confirmed that service of the Trahant Order should be effected on the Mailing Matrix, rather than the Special Notice List.[20] There was no objection to that instruction, and service was done in accordance with the bankruptcy court's order.[21]

## IV.    The Trahants filed this lawsuit based on the allegation that the Appellees should not have served the Trahant Order on the Mailing Matrix or, relatedly, that the Mailing Matrix is faulty.

On June 2, 2023, the Trahants filed the Petition for Damages ("Petition") against the Appellees in state court. Mr. Trahant alleged claims for abuse of process,

---

[15] ROA.2253, Email from Mr. Caine to Chambers (June 9, 2022, 11:58 A.M.).

[16] ROA.2253-54, Emails Between Mr. Caine and Chambers at 1–2 (June 9, 2022).

[17] ROA.2275-76, Transcript at 20:24–21:11 (June 13, 2022).

[18] ROA.2275-76, *id.*

[19] ROA.2277, *id.* at 22:7–13.

[20] ROA.2268-69, *id.* at 13:24–14:3.

[21] ROA.2284, Excerpt from DRC's Affidavit of Service. Parties to a bankruptcy case are often charged with serving documents in bankruptcy proceedings. *See generally* Local Rule 2002-1.

intentional infliction of emotional distress, and negligent infliction of emotional distress based on the Appellees' service of the Trahant Order. Ms. Trahant alleged a loss of consortium claim derivative of Mr. Trahant's claims. The Petition's core claim was that the Trahant Order should not have been served on the Mailing Matrix. The Trahants imply that the Appellees instead should have used some other narrower list of recipients—although they did not expressly identify the list that allegedly should have been used. Relatedly, the Trahants appear to object to the composition of the Mailing Matrix in the first instance, including because it contains many people who, the Trahants alleged, "have nothing to do with the Archdiocese bankruptcy."[22]

Thus, the Trahants' claims in the state court petition were both a collateral attack on the bankruptcy court's orders and a demand for damages based on the Appellees' compliance with those orders. The Trahants' petition challenged the Mailing Matrix approved by the bankruptcy court, the Special Notice List Order entered by the bankruptcy court, the bankruptcy court's Trahant Order, and the Appellees' actions in complying with the Trahant Order and subsequent instructions by the bankruptcy court. The Petition also implicates the DRC Appointment Order,[23] including relative to DRC's indemnification by the Debtor.

On June 14, 2023, the Appellees timely removed the Trahants' state court Petition to federal court.[24] As set forth in the Notice of Removal, while the Trahants' claims arise in the Chapter 11 Case, bankruptcy jurisdiction also exists because, at the very least, the lawsuit relates to the Chapter 11 Case. *See Celotex Corp. v.*

---

[22] ROA.599, Petition, ¶ XXIII.
[23] ROA.2240, DRC Appointment Order.
[24] ROA.581, Notice of Removal.

*Edwards*, 514 U.S. 300, 310 (1995); *In re Burch*, 835 F. App'x 741, 748 (5th Cir. 2021) ("Each of Burch's state-court claims is premised on his interpretation of a Chapter 11 bankruptcy order, and so each arises from or is related to his Title 11 bankruptcy proceedings.").

## V.     The District Court referred the Trahants' suit to the Bankruptcy Court "for all purposes."

On July 12, 2023, the Appellees filed a Request for Reference to Bankruptcy Judge Under Local Rule 83.4.1 and the General Order of Reference,[25] asserting that this lawsuit arises in the Chapter 11 Case and is, at the very least, "related to" it, such that the *Barton* doctrine applies, and because the bankruptcy court has jurisdiction over and a special interest in this lawsuit. On July 14, 2023, the district court referred the lawsuit to the bankruptcy court, noting that it appears "that the notice of removal invokes federal bankruptcy jurisdiction because the plaintiffs' claims constitute either a core proceeding . . . or, at least, a proceeding related to a title 11 case."[26] The district court referred the lawsuit "to the bankruptcy court for all purposes, including, but not limited to, disposition of the pending motion to remand . . . and consideration of the *Barton* doctrine's gatekeeping issues as raised in the request for reference."[27]

After the Trahants filed a Motion to Reconsider or, Alternatively, Motion to Withdraw Order Referring to Bankruptcy Judge,[28] the district court once again found that referral was appropriate because (1) the Trahants' claims "implicate the

---

[25] ROA.754, Request for Reference to Bankruptcy Judge Under Local Rule 83.4.1 and the General Order of Reference at 1.
[26] ROA.764-65, Referral Order at 1–2.
[27] ROA.766, *id.* at 3.
[28] ROA.767.

bankruptcy court's gatekeeping function under the *Barton* doctrine" because they had "brought claims against counsel for the Archdiocese and its court-authorized claims-and-notice agent for their allegedly tortious interpretation and execution of an order of the bankruptcy court that was issued in connection with the Archdiocese's pending chapter 11 case";[29] (2) under the bankruptcy court's gatekeeping function, it is "empowered to determine – in the first instance – whether subject-matter jurisdiction exists";[30] (3) "the provisions of § 157(b) do not prevent the referral of personal injury tort claims to the bankruptcy court for resolution of certain pretrial issues,"[31] including a "motion for summary judgment";[32] and (4) the factors enumerated in *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985) for the propriety of withdrawing the reference order did not favor the Trahants' request for withdrawal.[33]

## VI.  The Bankruptcy Court found the Trahants' § 144 Affidavit and Motion to Recuse meritless.

The Trahants next filed a § 144 Affidavit in the district court before filing an identical affidavit and a Motion to Recuse in the bankruptcy court. Treating the § 144 Affidavit as a motion to recuse, the district court denied recusal, in part, because § 144 does not apply to bankruptcy judges.[34] The bankruptcy court then found the Trahants' § 144 Affidavit and Motion to Recuse to be without merit because a

---

[29] ROA.830, Order & Reasons at 7.
[30] ROA.830, *id.*
[31] ROA.830, *id.*
[32] ROA.829-30, *id.* at 7–8 (citing *In re Promise Healthcare Grp., LLC*, No. 18-12491, 2023 WL 3026715, at *12 (Bankr. D. Del. Apr. 20, 2023) (cleaned up).
[33] ROA.832-33, *id.* at 9–10.
[34] ROA.875-76, Order & Reasons at 4–5.

reasonable, objective observer would not harbor doubts about the bankruptcy court's impartiality to preside over the adversary proceeding. *First*—and like the district court before it—the bankruptcy court held that § 144, by its own terms, plainly does not apply to bankruptcy judges.[35] *Second*, the bankruptcy court placed the Trahants' allegations of bias and prejudice in context and found that a reasonable, objective person would not conclude that the court's intrajudicial comments indicated a deep-seated antagonism that would make fair judgment impossible.[36] The bankruptcy court also concluded that its participation on educational panels and co-teaching a law school class with Mr. Mintz were not grounds to support recusal.[37] Finally, the court found that the forty nearly-identical "form declarations" submitted by Mr. Trahant in support of recusal were unhelpful and reflected only the subjective opinions and improper legal conclusions of the declarants.[38]

## VII. The Bankruptcy Court denied the Trahants' Motion to Remand because the Petition implicates the *Barton* doctrine and constitutes a core proceeding arising from the Appellees' roles as the Debtor's professionals in the Chapter 11 Case.

On November 30, 2023, the bankruptcy court denied the Trahants' motion to remand[39] for two independently sufficient reasons: (1) the *Barton* doctrine applies, such that no other forum has jurisdiction; and (2) the Trahants' claims constitute a core proceeding that the bankruptcy court "may hear and determine on a final basis" because the Trahants' claims "arise from the [Appellees'] roles as the Debtor's

---

[35] ROA.983, Memorandum Opinion and Order at 7.

[36] ROA.987-1003, *id.* at 11–27.

[37] ROA.1003-05, *id.* at 27–29.

[38] ROA.1005-06, *id.* at 29–30.

[39] ROA.54, Memorandum Opinion and Order.

professionals" in the Chapter 11 Case and could "not exist outside of the bankruptcy process."[40]

The bankruptcy court did not consider the alternative bases for federal jurisdiction briefed by the Appellees, which independently support affirming the bankruptcy court's Remand Order. *First*, the Trahants challenge service in the Chapter 11 Case, and "[w]hether the federal rules for services of process were met is a federal question." *Jacuzzi v. Pimienta*, 762 F.3d 419, 421 (5th Cir. 2014) (reversing district court dismissal for lack of subject matter jurisdiction). *Second*, the Trahants' right to any relief necessarily depends on resolution of a substantial, disputed question of federal law that would not "disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs of Se. La. Flood Protection Auth. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721–22, 724 (5th Cir. 2017).

## VIII. The Bankruptcy Court granted the Appellees' Motion for Summary Judgment.

On July 16, 2024, the bankruptcy court entered summary judgment dismissing the Trahants' claims, finding that the Appellees are entitled to derivative absolute judicial immunity because they are an arm or extension of the court whose actions were taken pursuant to a court order.[41] "The fact that all of the [Appellees] are professionals of the Debtor is not in dispute."[42] Therefore, the Appellees, while acting as the court-approved professionals administering the Debtor's estate, merited the same derivative absolute judicial immunity that a Trustee would have for actions

---

[40] ROA.110-12, *id.* at 9–11.
[41] ROA.2458, Memorandum Opinion and Order at 15.
[42] ROA.2459, *id.* at 16.

connected to the administration of the Debtor's estate. The bankruptcy court correctly held that the Appellees' entitlement to derivative absolute judicial immunity defeats the Trahants' claims for abuse of process, negligent/intentional infliction of emotional distress, and loss of consortium.

The bankruptcy court also denied the Trahants' request for additional discovery under Rule 56(d) because any such discovery was not likely to produce facts needed to create a genuine issue of material fact.[43] The Trahants identified only three areas of discovery they claimed were necessary to oppose summary judgment: "a complete list of recipients of the June 7, 2022 Trahant Order; dates when the mailing was sent to each recipient; and whether and when defendants had notice that the noticing was overbroad."[44] The Trahants' Rule 56(d) request was defective as a matter of law, as none of the requested discovery would affect the immunity analysis.

## IX. The Trahants appealed the Bankruptcy Court's orders denying the Trahants' motion to recuse the bankruptcy judge, denying the Trahants' motion for remand, and granting summary judgment in favor of the Appellees, and the District Court affirmed.

On July 25, 2025, the Trahants filed their notice of appeal of the bankruptcy court's judgments and orders to the district court.[45] In that notice, the Trahants improperly included the district court's reference order and order denying the Trahants' 28 U.S.C. § 144 Affidavit.[46] As the district court stated, the Trahants "seize[d] upon their improper act as the basis for asking that [Judge Ashe] be

---

[43] ROA.2459-60, *id.* at 16–17.
[44] ROA.2297, Memorandum in Opposition to Motion for Summary Judgment at 7.
[45] ROA.6.
[46] ROA.6.

disqualified"[47] in their Motion for Disqualification Pursuant to 28 U.S.C. § 47.[48] The district court denied that motion as being legally, procedurally, and factually meritless.[49]

On March 5, 2025, the district court affirmed the bankruptcy court's orders denying the Trahants' motion to recuse the bankruptcy judge, denying Trahants' motion for remand, and granting summary judgment in favor of Appellees.

The district court affirmed the bankruptcy court's denial of the Trahants' motion to recuse under 28 U.S.C. § 144 because "[n]either of [the Trahants'] current arguments surmount" the "controlling United States Supreme Court and Fifth Circuit precedent confirming that § 144 does not apply to bankruptcy judges."[50] Under 28 U.S.C. § 455, the district court affirmed the bankruptcy court because the Trahants' allegations "fail[ed] to meet the objective standard for recusal set by § 455" and because those allegations did not constitute "such a high degree of favoritism or antagonism as to make fair judgment impossible."[51]

The district court affirmed the bankruptcy court's denial of the Trahants' motion to remand because (1) "*each* of [the Trahants'] claims (abuse of process, intentional and negligent infliction of emotional distress, and loss of consortium) arise out of the same set of alleged facts concerning Appellees' interpretation and enforcement of an order of the bankruptcy court" and are, therefore, "core" matters

---

[47] ROA.260, Order & Reasons at 7.
[48] ROA.223.
[49] ROA.254, Order & Reasons.
[50] ROA.537, Opinion at 6 (quotations omitted).
[51] ROA.539, Opinion at 8 (quotations and citations omitted).

under 28 U.S.C. § 157(a);[52] (2) *each* of Trahants' claims arise from the Appellees' roles as "court-approved claims-and-noticing agent and counsel for the debtor-in-possession," such that the *Barton* doctrine applied to bar the Trahants' claims without leave of the bankruptcy court;[53] and (3) mandatory abstention did not apply, and permissive abstention would have been inappropriate given that "resolution of [the Trahants'] claims is wholly dependent upon the bankruptcy court interpreting its own orders and the execution of those orders."[54]

Finally, the district court affirmed the bankruptcy court's order granting summary judgment in favor of the Appellees because (1) the Appellees are entitled to derivative absolute judicial immunity because their alleged actions serving as the basis of the Trahants' claims were "consistent with [their] duties as the Archdiocese's court-approved professionals" and were completed "under the supervision and subject to the order of the bankruptcy judge";[55] and (2) the Appellees complied with the bankruptcy court's instructions.[56]

## SUMMARY OF THE ARGUMENT

The Trahants seek to distance the Appellees' actions from their duties as court-approved professionals administering the Debtor's estate. However, even a cursory review of the Trahants' state court Petition reveals that their claims are directly intertwined with the Appellees' performance of their professional obligations before the bankruptcy court in the Chapter 11 Case. As a result, the district court correctly

---

[52] ROA.546, Opinion at 15 (citation omitted) (emphasis in original).
[53] ROA.547, Opinion at 16.
[54] ROA.552, Opinion at 21 (cleaned up).
[55] ROA.556, Opinion at 25 (cleaned up).
[56] ROA.558, Opinion at 27.

referred the Trahants' claims to the bankruptcy court for all purposes, including disposition of any motion for summary judgment. The district court also did not err in affirming the bankruptcy court's conclusions that the Trahants' claims (though sounding in tort) arise in the Chapter 11 Case and that, as a result, abstention was neither mandatory nor appropriate. It follows that the Trahants violated the *Barton* doctrine when they filed their Petition against the Appellees in state court without first securing leave to do so from the bankruptcy court.

The Trahants further sought to escape bankruptcy court review of their collateral attack against the Trahant Order by seeking Judge Grabill's recusal simply because the bankruptcy court's previous orders and conclusions pertained to Mr. Trahant. However, "[a]dverse judicial rulings are not themselves indications of bias, but are the necessary product of the adversarial process and a judge's role as umpire."[57] Once the intrajudicial remarks are placed in context, no reasonable, objective observer would harbor doubts about the bankruptcy court's impartiality to preside over the adversary proceeding. The district court correctly found that the bankruptcy court did not abuse its discretion in declining to consider the forty "form declarations" submitted by the Trahants in support of recusal, as each of the declarations only offered ultimate legal conclusions premised on subjective interpretations of immaterial facts.

After the bankruptcy court elected to retain jurisdiction over the Trahants' claims, it correctly concluded that those claims were defective as a matter of law.

---

[57] *Sanders v. Christwood, L.L.C.*, No. 17-cv-9733, 2020 WL 7417995, at *5 (E.D. La. Dec. 18, 2020) (Ashe, J.).

Actions taken by the Debtor's court-approved professionals pursuant to the bankruptcy court's instructions enjoy derivative absolute judicial immunity. The Trahants disputed no facts material to the bankruptcy court's analysis, and the three singular items for which they sought additional discovery were irrelevant to the immunity analysis.

The district court's judgment affirming the bankruptcy court's judgment dismissing the Trahants' claims should be affirmed.

## ARGUMENT

**I.     The District Court did not abuse its discretion when it referred the Trahants' Petition to the Bankruptcy Court.**

The district court properly referred the Trahants' Petition to the bankruptcy court under 28 U.S.C. 157(a), Eastern District Local Rule 83.4.1, and General Order 2021-5.[58] The "reference to and withdrawal from the bankruptcy court of bankruptcy matters is left to the discretion of the district court." *In re Mirant Corp.*, 197 Fed. App'x 285, 294 (5th Cir. 2006). A district court does not abuse its discretion when its reference order is "based on a sound, articulated foundation"[59] in accordance with the "'general principles'" that this Court formulated in *Holland American Insurance Co. v. Succession of Roy*, 777 F.2d 992, 998–99 (5th Cir. 1985). *See Matter of Lieb*, 915 F.2d 180, 184 (5th Cir. 1990).

The district court referred the Trahants' Petition to the bankruptcy court for four reasons: (1) the Trahants' claims "implicate the bankruptcy court's gatekeeping function under the *Barton* doctrine" because they had "brought claims against

---

[58] ROA.828-31, Order & Reasons at 5–8.
[59] *See Holland*, 777 F.2d at 998

counsel for the Archdiocese and its court-authorized claims-and-notice agent for their allegedly tortious interpretation and execution of an order of the bankruptcy court that was issued in connection with the Archdiocese's pending chapter 11 case";[60] (2) under the bankruptcy court's gatekeeping function, it is "empowered to determine – in the first instance – whether subject-matter jurisdiction exists";[61] (3) "the provisions of § 157(b) do not prevent the referral of personal injury tort claims to the bankruptcy court for resolution of certain pretrial issues,"[62] including a "motion for summary judgment";[63] and (4) the factors enumerated in *Holland*, 777 F.2d 992 for the propriety of withdrawing the reference order did not favor the Trahants' request for withdrawal.[64]

　　As confirmed by the bankruptcy court, and again by the district court on appeal, the Trahants' claims are "core" matters under 28 U.S.C. § 1334(b), and, under the *Barton* doctrine, "no other court enjoys subject-matter jurisdiction" over the Trahants' state court Petition but the bankruptcy court.[65] When combined with the district court's "consideration of judicial economy and the efficient use of the parties' resources,"[66] it cannot be said that the district court abused its discretion or that the order was not based on a "sound, articulated foundation." *See Holland*, 777 F.2d at 998.

---

[60] ROA.830, Order & Reasons at 7.

[61] ROA.830, *id.*

[62] ROA.830, *id.*

[63] ROA.829-30, *id.* at 7–8 (citing *In re Promise Healthcare Grp., LLC*, No. 18-12491, 2023 WL 3026715, at *12 (Bankr. D. Del. Apr. 20, 2023) (cleaned up).

[64] ROA.832-33, *id.* at 9–10.

[65] ROA.62, Memorandum Opinion and Order at 9.

[66] ROA.833, Order & Reasons at 10.

**II.    The District Court correctly affirmed the Bankruptcy Court's Order denying the Trahants' Recusal Motion.**

**A.    The Trahants' recusal argument fails because the substantive orders that were part of the district court's appeal were reviewed *de novo*.**

As a preliminary matter, the "Fifth Circuit has repeatedly found no risk of injustice to the parties when the trial court's ruling is subject to *de novo* review—as is true here for . . . the bankruptcy court's . . . rulings." *In re Roman Catholic Church of Archdiocese of New Orleans*, 652 B.R. 138, 153 (E.D. La. 2023) (Ashe, J.) (collecting cases). Because the district court reviewed the substance of the bankruptcy court's Remand Order and Judgment *de novo*, the Trahants were "guaranteed" not one, but two additional rounds of "fair and impartial review of these rulings." *Id.* Thus, even if Judge Grabill's recusal had been required (and it was not), the "harmless error" rule would apply. *See Patterson v. Movil Oil Corp.*, 335 F.3d 476, 485 (5th Cir. 2003). For this reason alone, the district court did not err in affirming the bankruptcy court's Recusal Order.

**B.    There was no basis for recusal, and the Bankruptcy Court did not abuse its discretion by declining to recuse.**

Beyond the "harmless error" rule, the district court correctly affirmed the bankruptcy court's Recusal Order because a reasonable, objective observer would not harbor doubts about the bankruptcy court's impartiality to preside over the adversary proceeding. As the district court summarized, recusal must be evaluated under an objective standard and "'must be strictly construed for form, timeliness,

and sufficiency in order to guard against the danger of frivolous attacks on the orderly process of justice.'"[67] In this case, the Trahants first filed an affidavit pursuant to 28 U.S.C. § 144 with the district court before filing a § 144 Affidavit and Motion for Recusal under 28 U.S.C. § 455 in the bankruptcy court. The Trahants' § 144 Affidavit and Motion for Recusal each will be addressed in turn.

### 1.    Section 144 Affidavit

For the fourth time in this litigation, the Trahants ignore controlling United States Supreme Court and Fifth Circuit precedent confirming that § 144 does not apply to bankruptcy judges. *Hepperle v. Johnston*, 590 F.2d 609, 613 (5th Cir. 1979) ("Appellant incorrectly bases his motion upon 28 U.S.C. § 144 (1976), which by its terms applies only to district judges."); *Liteky v. U.S.*, 510 U.S. 540, 548 (1994) (explaining that Congress amended § 455 to "duplicate[] the grounds of recusal set forth in § 144" and "ma[k]e them applicable to *all* justices, judges, and magistrates (and not just district judges)") (emphasis in original).[68] Ostensibly, the Trahants' refusal to acknowledge this binding precedent stems from their mistaken belief that filing an affidavit under § 144 "automatically triggers the reassignment of the matter to another judge."[69] In their appeal, the Trahants go so far as to state that "the very purpose of 28 U.S.C. § 144 was thwarted"[70] by the bankruptcy court's decision to

---

[67] ROA.19, Order & Reasons at 3 (quoting *Danielson v. Winnfield Funeral Home of Jefferson, Inc.*, 634 F. Supp. 1110, 1113 (E.D. La. 1986)).

[68] *See also* ROA.20, Order & Reasons at 4 ("Reading the plain language of the statute, § 144 applies only to the recusal of district judges; it does not apply to bankruptcy judges."); ROA.983-84, Memorandum Opinion and Order at 7–8 (stating that this "conclusion is supported by the majority of courts across the country" and collecting cases).

[69] ROA.984, *id.* at 8.

[70] Appellants' Br. at 22.

rule on the § 144 Affidavit. As the bankruptcy court plainly stated, "[t]hat is not true."[71]

Before recusal is warranted under § 144, the *district* judge before whom the § 144 affidavit was filed must first make a determination that the affidavit was both timely and sufficient. *See* 28 U.S.C. § 144 (providing that "[w]henever a party to any proceeding in a *district court* makes and files a *timely* and *sufficient* affidavit . . . .") (emphasis added); *Henderson v. Dep't of Public Safety & Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990) ("Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavit, but may not pass on the truth of the matter alleged."). Notably, the Trahants' own cited authority supports that the bankruptcy court was correct in determining the sufficiency of the affidavit in the first instance.[72]

The Trahants' attempts to use § 144 to circumvent the bankruptcy court's obligation to determine the sufficiency and timeliness of the Trahants' request for recusal in the first instance fails as a matter of law.

### 2.     28 U.S.C. § 455

Just as with § 144, it is the judge before whom the request for recusal is made who must decide whether to recuse under § 455. As the bankruptcy court explained:

> Section 455(a) provides that "[a]ny . . . judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). Section 455(b)

---

[71] ROA.984, Memorandum Opinion and Order at 8.

[72] ROA.835, Affidavit of Richard Trahant Pursuant to 28 U.S.C. § 144 at 2 n.1 (citing *e.g.*, *In re Gulph Woods Corp.*, 84 B.R. 961 (Bankr. E.D. Pa. 1988) (finding that the party's § 144 affidavit was insufficient in the first instance and declining to recuse)).

likewise provides that "[h]e **shall also disqualify himself**" under certain enumerated circumstances. *Id.* § 455(b). "The statute is addressed to the judge whose recusal is in question and demands that the judge decide for him or herself whether to recuse." *United States v. Champlin*, 388 F. Supp. 2d 1177, 1180 (D. Haw. 2005).[73]

Contrary to the Trahants' suggestion, the aims of recusal are not "thwarted"[74] by this procedure; rather, "the judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *Doe*, 2021 WL 4460465 at *4. After all, "a judge is as much obliged not to recuse himself unnecessarily as he is obliged to recuse himself when necessary." *Id.* at *5 (quotations omitted).

Turning to the merits, the Trahants did not present any factual basis supporting that a reasonable, objective observer would harbor doubts about the bankruptcy court's impartiality or absence of bias. Section 455 provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

The Trahants did not meet either standard.

The standard for alleged bias is objective, and relies on "reference to the 'well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical,

---

[73] ROA.986, Memorandum Opinion and Order at 10 (emphasis and alterations supplied by bankruptcy court).

[74] Appellants' Br. at 22.

and suspicious person.'" *Andrade v. Chojnacki*, 338 F.3d 448, 454–55 (5th Cir. 2003) (quoting *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). The review must "entail a careful consideration of context, that is, the entire course of judicial proceedings, rather than isolated incidents." *Id.* (citing *Sao Paulo State of Federative Rep. of Brazil v. Am. Tobacco Co.*, 535 U.S. 229, 332–33 (2002); *United States v. Avilez-Reyes*, 160 F.3d 258, 259 (5th Cir. 1998)). "Finally, the origin of a judge's alleged bias is of critical importance." *Id.*

The Trahants primarily raise a string of intrajudicial statements as the basis for recusal,[75] which, without more, fail to constitute a basis for impartiality or prejudice under *Liteky*. The extrajudicial source rule contemplates that developments in and information acquired during the current or prior proceedings will "'almost never constitute a valid basis for a bias or partiality motion.'" *Andrade*, 338 F.3d at 455 (quoting *Liteky*, 510 U.S. at 555). To succeed on appeal, therefore, the Trahants must clear three hurdles while also "demonstrat[ing] that the district court's refusal to recuse was not merely erroneous, but, rather, an abuse of discretion": "[t]hey must (1) demonstrate that the alleged comment, action, or circumstance was of 'extrajudicial' origin, (2) place the offending event into the context of the entire

---

[75] The Trahants also argued in the bankruptcy court that the court's service and participation in legal education programming and co-teaching law class on bankruptcy law provided a basis for recusal. ROA.841, Affidavit of Richard Trahant at 7 ¶ 13. The Trahants failed to brief this issue on appeal, and, therefore, have waived any arguments relating to these extrajudicial allegations. "A [party] waives an issue if he fails to adequately brief it. . . . [T]his court requires arguments to be briefed to be preserved and issues not adequately briefed are deemed abandoned. . . . Failure to include an argument in the issue statement or body of the brief may also constitute waiver." *Castro v. McCord*, 259 F. App'x 664, 665–66 (5th Cir. 2007) (quotations and citations omitted).

[proceeding], and (3) do so by an 'objective' observer's standard." *Id.* The Trahants fail to do so.

*First* and *second*, the Trahants' speculation that the bankruptcy court's intrajudicial comments purportedly support recusal all stem from their failure to place those comments in context. The bankruptcy court categorized Mr. Trahant's allegations into three distinct groups, with the first two groups deriving from comments made during transcribed status conferences in February 2022 and April 2022. Each of those status conferences pertained to the U.S. Trustee's investigation into the source of the breach of the bankruptcy court's Protective Order and the effect of that breach on the Chapter 11 Case.

As required by *Andrade*, the bankruptcy court "place[d] the offending [comments] into the context" of the transcribed conferences and related developments in those proceedings.[76] The bankruptcy court found that (1) the statements made during the February 2022 conference not only "do not show reliance on an extrajudicial source,"[77] but also were not directed at the Trahants; and (2) the speculative statements made during the April 2022 conference reflect a *lack* of "extrajudicial information" and the court's attempt "to work with the parties to protect the fairness of the process."[78] In context, the allegedly offensive comments "objectively do not display a deep-seated antagonism against the Trahants that would

---

[76] ROA.989-998, Memorandum Opinion and Order at 13–22.
[77] ROA.992, *id.* at 16.
[78] ROA.998, *id.* at 22.

make fair judgment in the Adversary Proceeding impossible,"[79] and a reasonable observer would not question the bankruptcy court's impartiality.

The third category of statements, which the Trahants emphasize in their appeal, involves the bankruptcy court's remarks that "there are a few bad, bad actors, but, on the whole, the committee members have signed the protective order."[80] According to the Trahants, this statement demonstrates "obvious animus against Mr. Trahant"[81] and, therefore, required recusal. While the Trahants may disagree with the bankruptcy court's conclusion that Mr. Trahant violated the protective order, disagreement with a ruling does not support recusal, and the case on which the Trahants rely for support is readily distinguished.

In *United States v. Liggins*, 76 F.4th 500, 506 (6th Cir. 2023),[82] a district judge made "many disparaging remarks" about a criminal defendant before trial, "the most troubling" of which was that the defendant, an African American man, "look[ed] like a criminal to [him]." *Liggins*, 76 F.4th at 506. In concluding that recusal was appropriate, the Sixth Circuit emphasized that the district judge's comments reflected prejudgment of the defendant's guilt that "served no purpose for courtroom administration, but rather constituted gratuitous commentary by the district judge about his opinion of Liggins and his feelings about Liggins' case." *Id.* at 507 (citations omitted).

---

[79] ROA.998, *id.*
[80] Appellants' Br. at 24.
[81] *Id.*
[82] Appellants' Br. at 27–29.

The comments in *Liggins* stand in stark contrast to the singular "bad, bad actor" comment made by Judge Grabill. As the bankruptcy court explained:

> The Court's reference to "a few bad actors" was made on the record in the course of the Debtor's bankruptcy case **after** the UST had completed a thorough investigation of the leak of protected information obtained through the discovery process in the Debtor's bankruptcy case and **after** the Court had reviewed and accepted the UST's findings and issued an Order finding that Trahant had knowingly and willfully violated this Court's Protective Order. "[N]ot subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings." *Liteky v. United States*, 510 U.S. 540, 551 (1994). And "[n]ot establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555–56.[83]

Therefore, these "[a]dverse judicial rulings are not themselves indications of bias, but are the necessary product of the adversarial process and a judge's role as umpire." *Sanders v. Christwood, L.L.C.*, No. 17-cv-9733, 2020 WL 7417995, at *5 (E.D. La. Dec. 18, 2020) (Ashe, J.).[84]

---

[83] ROA.1001, Memorandum Opinion and Order at 25 (emphasis in original).

[84] *See also United States v. Zagari*, 419 F. Supp. 494, 505 (N.D. Cal. 1976) ("The opinion in the *Davis* case [*Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 517 F.2d 1044, 1053763 (5th Cir. 1975),] makes it clear that it is not the purpose of Secs. 144 or 455 to enable the unscrupulous or reckless lawyer to engage in conduct in a course of litigation that might cause any conscientious judge to express, even in caustic terms, his disapproval of it, and thereby put himself in position thereafter to urge successfully motions to disqualify the judge in his subsequent cases before him.").

The bankruptcy court also properly rejected the Trahants' two remaining complaints[85] relating to the presence of the word "Yes!" in the caption of an Order to Show Cause and another district judge's decision to recuse in this proceeding. *First*, an objective observer would not consider the mistaken presence of the word "Yes!" in the caption of an Order to Show Cause issued to Mr. Trahant to "reek[] of bias against him;"[86] such a conclusion is not only "illogical"[87] but also reflects the view of the "hypersensitive, cynical, and **suspicious** person." *Andrade*, 338 F.3d at 454–55 (quotations omitted, emphasis added).[88] *Second*, Judge Papillion's decision to recuse from this lawsuit—regardless of his reasons—"is individual to him just as this Court's decision is individual to her" and "ha[d] no bearing on" the bankruptcy court's "consideration of the Recusal Motion."[89] These two additional allegations did not support recusal.

---

[85] In their section on recusal, the Trahants also cite a newspaper article published on November 29, 2023 that is critical of the bankruptcy court's handling of the Chapter 11 Case. Appellants' Br. at 27. To the extent the Trahants base their appeal on this article, such an argument would be both improper and illogical. *First*, the bankruptcy court denied the Trahants' Recusal Motion on November 13, 2023—more than two weeks prior to the article's publication—such that it cannot be an abuse of discretion not to have considered it in the Trahants' request. *Second*, this article was not filed in the district court or bankruptcy court record (except for the Trahants' improper attachment of that article to their initial appellate brief), has never been cited by any party in any motion, opposition, or reply, and was not considered by the bankruptcy court in making any rulings. *See* ROA.393–404, Ex. 3 to Trahants' District Court Appellate Brief. The newspaper article also is inadmissible hearsay.

[86] Appellants' Br. at 25–26.

[87] ROA.1002, Memorandum Opinion and Order at 26 n.6.

[88] *Compare with* Appellants' Br. at 25 n.17 (stating that the bankruptcy court's explanation of how the word "Yes!" appeared in the Order "made it seem more **suspicious**") (emphasis added).

[89] ROA.1002-1003, Memorandum Opinion and Order at 26–27 n.7. *See Doe*, 2021 WL 4460465, at *4 ("The issue of recusal requires a sensitive weighing of the circumstances in each case and is committed to the sound discretion of the district judge.") (quotations omitted).

*Third*, the forty "standard form" declarations attached to Mr. Trahant's affidavit underscore the Trahants' lack of objectivity in requesting recusal. Those declarations are irrelevant and subjective, and the bankruptcy court did not abuse its discretion in declining to consider them. Each of the declarations is virtually identical and merely recites that it was "offensive" for the bankruptcy court to find against Mr. Trahant "when [the declarant] consider[s] that this bankruptcy is about pedophile clergy" and concludes that the bankruptcy court is "biased against Mr. Trahant."[90] Further, the declaration of Mrs. Trahant is anything but objective, as she is a party to this case.[91] Notwithstanding that these declarations are not competent evidence, the statements do not provide any facts material to the recusal analysis and, thus, "fall in the category of intemperate accusations, inapposite references, and innuendos." *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1409 n.5 (5th Cir. 1994).

The decision whether to recuse "is solely a question of law." *Melendres v. Arpaio*, No. 07-cv-2513, 2015 WL 13173306, at *9 (D. Ariz. July 10, 2015). Declarations (such as those attached to Mr. Trahant's affidavit) that "assume facts," "do not help the Court understand any particular fact," and "then opine on the legal conclusion" should not be considered in deciding a recusal motion. *Sacerdote v. New York Univ.*, No. 16-cv-6284, 2019 WL 2763922, at *4 (S.D.N.Y. July 1, 2019), *aff'd*, 9 F.4th 95 (2d Cir. 2021). The Trahants' attempt to distinguish *Melendres*[92] ignores

---

[90] *E.g.*, ROA.2387, Declaration of Amanda M. Breslin.
[91] ROA.2385, Affidavit of Amy O. Trahant.
[92] Appellants' Br. at 33.

that, like experts, laypeople also cannot opine on ultimate legal conclusions. *See* FED. R. EVID. 701.

For all these reasons, the bankruptcy court did not abuse its discretion in declining to recuse. In any event, because the substance of the orders granting the Appellees' Motion for Summary Judgment and denying the Trahants' Motion to Remand were reviewed *de novo*, any conceivable error was harmless.[93]

## III.   The District Court committed no error by denying the Trahants' improper Motion to Recuse the District Court Judge.

The district court's interlocutory orders were never part of the Trahants' appeal to the district court because 28 U.S.C. § 158 does not provide a mechanism for a party to appeal a district court order back to the district court that issued it. In pertinent part, section 158(a) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." "Section 158(a) expressly grants *district courts* jurisdiction to hear appeals from *bankruptcy courts'* decisions." *Matter of Topco, Inc.*, 894 F.2d 727, 734 (5th Cir. 1990) (emphasis in original). Given this black letter law, it was improper for the Trahants to designate the district court's orders as part of its appeal from the bankruptcy court's rulings under § 157, and those orders could not serve as the basis for disqualification under 28 U.S.C. § 47.

---

[93] ROA.535, Opinion at 4 ("The district court, sitting in its appellate capacity, reviews the bankruptcy court's conclusions of law and mixed questions of law and fact *de novo* . . . .") (citing *In re Texxon Petrochems., L.L.C.*, 67 F.4th 259, 262 (5th Cir. 2023)).

The district court did not mince words in denying the Trahants' Motion to Disqualify:

> As a matter of appellate procedure, the impropriety of noticing an appeal of district court orders in a bankruptcy court is patent. Not stopping there, though, Plaintiffs seize upon their improper act as the basis for asking that the undersigned be disqualified. . . . As shown above, the Court may only hear appeals of judgments and orders rendered by bankruptcy judges. Because the two orders of this Court in question were issued by a district court, not the bankruptcy court, the Court has no jurisdiction to review them on appeal under § 158 and the Court has no intention of doing so.[94]

The district court stayed true to that ruling, stating in its order affirming the bankruptcy court's judgments and orders that the district court "already [had] explained that it lacks jurisdiction to review its own orders on appeal. As such, the Court will not review its orders referring the case to the bankruptcy court and denying [the Trahants'] motion to recuse the bankruptcy judge."[95] Despite that (1) the district court's orders were not properly part of the initial appeal under 28 U.S.C. § 158, and (2) the district court made clear that it would not and did not review its own orders during that appeal, the Trahants frivolously retain this argument in the current appeal.[96] It has no basis in the fact or the law and should be rejected.

---

[94] ROA.260, Order & Reasons at 7 (cleaned up).
[95] ROA.532, Opinion at 1 n.2 (cleaned up).
[96] Appellants' Br. at 39.

**IV.  The District Court correctly affirmed the bankruptcy court's order denying the Trahants' Motion to Remand.**

The bankruptcy court denied the Trahants' Motion to Remand under two independently sufficient bases: (1) the Trahants' claims are considered "core" matters under 28 U.S.C. § 1334(b), and (2) under the *Barton* doctrine, "no other court enjoys subject-matter jurisdiction" over the Trahants' state court Petition.[97] The district court affirmed each of these bases.[98] To the extent the Trahants seek to challenge the bankruptcy court's authority to issue an order granting summary judgment in favor of the Appellees, that argument has no merit. *See In re Promise Healthcare Grp., LLC*, No. 18-12491, 2023 WL 3026715, at *12 (Bankr. D. Del. Apr. 20, 2023).

On appeal, the Trahants focus their jurisdictional arguments only on mandatory and permissive abstention. Nevertheless, because the abstention analysis relates to 28 U.S.C. § 1334 and *Barton*, the Appellees will address them in turn.

**A.  The Bankruptcy Court correctly held that bankruptcy jurisdiction exists under 28 U.S.C. § 1334(b).**

The critical facts on which the Trahants' state court lawsuit are based arose in the Chapter 11 Case. The Petition attacks the service methods and recipients authorized by the bankruptcy court, specifically targeting the Appellees' performance of duties imposed by the bankruptcy court's orders. Thus, the Petition arises under the Bankruptcy Code and constitutes a "core proceeding."

---

[97] ROA.62, Memorandum Opinion and Order at 9.
[98] ROA.543-550, Opinion at 12–19.

Section 1334 grants district courts "original and exclusive jurisdiction" over all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The district courts also enjoy "original but not exclusive jurisdiction of all civil proceedings arising under" the Bankruptcy Code or "arising in or related to cases under" the Bankruptcy Code. 28 U.S.C. § 1334(b). "The bankruptcy courts in turn draw their jurisdiction from the district courts under 28 U.S.C. § 157(a)." *In re Foster*, No. 22-10310, 2023 WL 20872, at *2 (5th Cir. Jan. 3, 2023) (quotations and citations omitted). "A bankruptcy court's statutory authority derives from 28 U.S.C. § 157(b)(1), which designates certain matters as 'core proceedings' and authorizes a bankruptcy court to determine the matters and enter final judgments." *In re Galaz*, 841 F.3d 316, 323 (5th Cir. 2016) (citations omitted).

"Nearly all courts to have considered the issue have held that a debtor's or trustee's suit against his attorneys or other estate professionals alleging malpractice in a bankruptcy case is a core proceeding, reasoning that where the malpractice occurs in the bankruptcy proceeding itself, the alleged malpractice could not have occurred 'but for' the bankruptcy and thus the claim 'arises in' the bankruptcy." *Galloway v. Bond, Botes & Stover, P.C.*, 597 F. Supp. 2d 676, 680 (S.D. Miss. 2008) (collecting cases). "Claims against a trustee and the trustee's counsel for their actions in a bankruptcy proceeding are the type of claims that could not arise outside of the context of the underlying bankruptcy case." *Foster*, 2023 WL 20872 at *2. Finally, because the Archdiocese was and remains a debtor in possession, it has "all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee

serving in a case under this chapter," 11 U.S.C. § 1107(a), such that the *Barton* doctrine also extends to the Appellees.

This reasoning applies with even greater force where, as here, the Appellees have been sued by the Trahants for the very act of effecting service of a bankruptcy court order on behalf of the Debtor based on the bankruptcy court's instructions. The actions underlying the lawsuit were taken "under superintendence of the bankruptcy court; [they] cannot stand alone."[99] As the bankruptcy court found, "[o]n its face," the Trahants' Petition "asserts claims that arise from the [Appellees' roles as the Debtor's professionals in the underlying bankruptcy case[,] . . . could not exist outside of the bankruptcy context[,] and are thus considered to be 'core' matters upon which this Court may enter final judgment."[100]

Thus, this lawsuit constitutes a core proceeding under § 1334(b) for which there is bankruptcy jurisdiction.

---

[99] *In re Southmark Corp.*, 163 F.3d 925, 932 (5th Cir. 1999) ("Southmark's lawsuit draws into question Coopers' performance of its duties under court order, and it seeks in part to recover on the claim Southmark would have had against Drexel. . . . [W]e conclude that Southmark's case against Coopers is a core proceeding in bankruptcy."); *In re Repository Techs., Inc.*, 601 F.3d 710, 721 (7th Cir. 2010) (concluding that the district court had original, "arising in" jurisdiction over a claim for abuse of process and observing, "[b]ecause [the] lawsuit is based on the defendants' role as bankruptcy counsel, recognizing these lawyers' right to remove the case to federal court is consistent with Congress's broad grant of federal jurisdiction over bankruptcy matters"); *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006) (determining that there was "arising in" jurisdiction when the defendant's "filing of the Contempt Motion [in the bankruptcy case], upon which Ethel's state-law action was based, was thus inextricably bound to the bankruptcy proceeding").

[100] ROA.111-12, Memorandum Opinion and Order at 10–11.

**B.    The *Barton* doctrine confirms that no other court would have jurisdiction over the Trahants' claims.**

The bankruptcy court also denied the Trahants' Motion to Remand because under the *Barton* doctrine, "no other court enjoys subject-matter jurisdiction over the State Court Action."[101]

"First articulated by the Supreme Court in *Barton v. Barbour*, 104 U.S. 126 (1881), the *Barton* doctrine provides that a party may not bring a lawsuit against a court-appointed receiver for acts done in the receiver's official capacity, unless the appointing court has affirmatively granted leave to sue." *Hadi*, 2018 WL 6675622, at *4. The *Barton* doctrine is not limited to receivers but also extends to suits against court-appointed fiduciaries of the estate,[102] such as a bankruptcy trustee and its counsel. "The Supreme Court reasoned that allowing the plaintiff's action to proceed without leave of the appointing court would have been 'an usurpation of the powers and duties which belonged exclusively to [the appointing] court.'" *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009) (quoting *Barton*, 104 U.S. at 136).

Here, all of the Trahants' claims "arise from the [Appellees'] roles as Debtor's professionals in the underlying bankruptcy case, specifically, their obligations and conduct as professionals of the Debtor to serve [the Trahant Order]."[103] Because the

---

[101] ROA.110, *id.* at 9 (citing *Hadi v. McCune Wright Arevalo LLP*, No. 18-05104, 2018 WL 6675622, at *9 (C.D. Cal. Dec. 17, 2018).

[102] *See Foster*, 2023 WL 20872 at *5 ("Under [the *Barton*] doctrine, before a plaintiff can sue a bankruptcy trustee, or a court-approved professional employed by a bankruptcy trustee such as counsel for the trustee, in a forum other than the appointing court, leave of the appointing court must be obtained.").

[103] ROA.109, Memorandum Opinion and Order at 8.

Archdiocese has all the rights, duties, and powers as a trustee, the bankruptcy court correctly concluded that the Trahants' claims are barred by the *Barton* doctrine.

There are two recognized exceptions to the *Barton* doctrine—the "business exception" and the "*ultra vires* exception"—neither of which applies to this case. The "business exception," based on 28 U.S.C. § 959(a), was not argued below or on appeal and plainly does not apply. The "*ultra vires* exception" also does not apply to the Trahants' claims. As an initial matter, this exception "has been interpreted narrowly." *In re Preferred Ready-Mix, LLC*, 660 B.R. 214, 219 (S.D. Tex. 2024), *rev'd on other grounds*, 2024 WL 5252498 (5th Cir. 2024), and the Fifth Circuit has never expanded the *ultra vires* exception to the *Barton* doctrine beyond the wrongful seizure of property. *Matter of Preferred Ready-Mix, L.L.C.*, No. 24-20158, 2024 WL 5252498 at *2 (5th Cir. Dec. 31, 2025). *See also In re Foster*, 2023 WL 20872 at *5 ("[O]ther circuits have applied the exception narrowly and only 'to the actual wrongful seizure of property by a trustee.'") (quoting *In re McKenzie*, 716 F.3d 404, 415 (6th Cir. 2013)).[104]

Here, the Trahants do not claim that the Appellees seized anyone's property; rather, the Trahants claim that the Appellees effected service of the Trahant Order "in bad faith."[105] These allegations do not fit within the *ultra vires* exception. "[R]egardless of the motives ascribed to, or claimed illegality of, the conduct of the court-appointed officials, as long as their conduct is attributable to their functions in

---

[104] *See also In re Cruz*, 562 B.R. 812, 817 (Bankr. M.D. Fla. 2016) (noting the lack of cases in which the *ultra vires* exception has applied, allowing a plaintiff to sue a bankruptcy trustee or receiver without first obtaining leave from the appointing court).

[105] Appellants' Br. at 18.

the bankruptcy process and are done under the bankruptcy court's supervision, the *Barton* doctrine applies." *Benta v. Christie's, Inc.*, No. 2013-cv-0080, 2021 WL 2546453, at *8 (D.V.I. June 21, 2021). *See also Satterfield v. Malloy*, 700 F.3d 1231, 1236 (10th Cir. 2012) ("[C]laims based on acts that are related to the official duties of the trustee are barred by the *Barton* doctrine even if the debtor alleges such acts were taken with improper motives."). Thus, the Trahants have not alleged (nor could they) that the Appellees' actions were so removed from their official duties and authority to be considered *ultra vires*.

Accordingly, the Appellees' actions taken pursuant to the bankruptcy court's instructions as court-approved professionals of the Debtor fall under the *Barton* doctrine, and no exception applies.

### C. Mandatory Abstention is not applicable.

The Trahants' argument for mandatory abstention fails as a matter of law. The Fifth Circuit has interpreted 28 U.S.C. § 1334(c)(2) "to mandate federal court abstention" only when each of four criteria are met: "'(1) [t]he claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.'" *In re TXNB Internal Case*, 483 F.3d 292, 300 (5th Cir. 2007) (quoting *Schuster v. Mims (In re Rupp & Bowman)*, 109 F.3d 237, 239 (5th Cir. 1997)). The Plaintiffs have not established any of these criteria, much less all of them.

*First*, "[m]andatory abstention does not apply to core proceedings." *Foster*, 2023 WL 20872 at *3.[106] The Trahants attempt to skirt this issue by suggesting that their claims are "state law claims between non-debtors" that, if anything, only "relate[] to" the Chapter 11 Case.[107] But as discussed above, the Trahants' claims could not have arisen "'but for' the bankruptcy and thus the claim[s] 'arise[] in' the bankruptcy." *Galloway*, 597 F. Supp. 2d at 680. Because the Trahants' claims arise from the Appellees' conduct as court-approved professionals during the course of the bankruptcy, those claims also constitute a "core proceeding." *In re Lowenbraun*, 453 F.3d at 321. Accordingly, mandatory abstention does not apply.

*Second*, though not considered by the bankruptcy court, there is an independent basis for jurisdiction outside of § 1334(b). "A civil suit may be removed from state court to federal court if the claim therein is one 'arising under' federal law, such that it is an action over which a district court would have original jurisdiction." *Hughes v. Chevron Phillips Chem. Co. LP*, 478 F. App'x 167, 170 (5th Cir. 2012). The Trahants' lawsuit fits within this category for two independent reasons: (1) federal question jurisdiction exists for the Trahants' impermissible

---

[106] Confoundingly, the Trahants focus on "related to" jurisdiction in their argument for mandatory abstention. Even then, the Trahants' claims "relate to" the Chapter 11 Case because the outcome of the suit "could alter the debtor's rights" and "liabilities." Appellants' Br. at 43 (quotations omitted). As the Appellees have "repeatedly reminded" the Trahants, the indemnification provisions of the DRC Appointment Order will continue to have an effect on the Debtor's estate as this litigation continues. *See* ROA.952, Appellees' Motion for Gatekeeping Injunction and Incorporated Memorandum in Support at 5.

[107] Appellants' Br. at 42 (quoting *In re Fort Worth Osteopathic Hospital, Inc.*, 406 B.R. 741, 745 (N.D. Tex. 2009)).

collateral attack on orders given by the bankruptcy court[108] because "[w]hether the federal rules for services of process were met is a federal question"[109]; and (2) resolution of the Trahants' claims require resolving substantial, disputed questions of federal law for which "federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."[110] The Trahants' lawsuit essentially seeks to re-litigate the composition of the Mailing Matrix, attacks the bankruptcy court's service instructions, and challenges the Appellees' compliance with those instructions as court officers. To permit those claims to proceed in state court would undermine the federal bankruptcy judicial system and cast doubt on its notice procedures.[111]

The Trahants' reliance on *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) and *Marren v. Stout*, 930 F. Supp. 2d 675, 685 (W.D. Tex. 2013)[112] is misplaced because neither involved disputed issues of federal law. In *Singh*, the plaintiff filed a malpractice action based on a trademark attorney's alleged failure "to introduce available evidence that would have successfully established secondary meaning." *Singh*, 538 F.3d at 337. The Fifth Circuit explained that the law on trademark was not disputed—only the facts: "whether [the plaintiff] had sufficient evidence that his trademark had acquired secondary meaning." *Id.* at 339. Similarly,

---

[108] *See Jacuzzi*, 762 F.3d at 421 ("Federal courts have federal-question jurisdiction to entertain collateral attacks on military tribunals—which, *like bankruptcy courts*, are Article I courts—for lack of jurisdiction.") (emphasis added).

[109] *Id.* (reversing district court dismissal for lack of subject matter jurisdiction).

[110] *See Tenn. Gas*, 850 F.3d at 721 (outlining four factors justifying removal).

[111] *See Hughes*, 478 F. App'x at 171. *See also Southmark*, 163 F.3d at 930–31 ("[E]nforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.").

[112] Appellants' Br. at 46–47.

in *Marren*, the court held that there was no federal question jurisdiction over the plaintiff's wrongful termination suit (despite reference to federal income tax law) because "neither party argues that an ambiguous provision of federal law should be interpreted in a way that would guarantee them victory in this case." *Marren*, 930 F. Supp. 2d at 685. By contrast, the Trahants' claims specifically attack the composition of the Mailing Matrix, the bankruptcy court's service instructions for the Trahant Order, and the Appellees' compliance with those service instructions. These exclusively federal issues are both substantial and disputed. *Singh* and *Marren* are inapposite, and mandatory abstention does not apply.

*Third* and *fourth*, while the Trahants' lawsuit "was commenced" in state court, "a number of courts have held that mandatory abstention is not appropriate where the suit in question has been removed and therefore is not pending in a state forum at the time abstention is sought." *In re Fort Worth Osteopathic Hosp., Inc.*, 406 B.R. at 746. Further, under the *Barton* doctrine, any state court is without jurisdiction to hear the lawsuit, such that the Trahants' claims cannot be timely litigated in another forum. Though not considered by the bankruptcy court, the Plaintiffs' decision to sue DRC, which is subject to an order allowing it to seek indemnification by the Debtor, also violates the automatic stay in the Chapter 11 Case and provides yet another reason why a state court lacks jurisdiction to adjudicate this matter, much less do so in a timely manner.[113] The Trahants cannot satisfy the third and fourth criteria.

---

[113] *See* 6–7, *supra* (discussing DRC Appointment Order).

Accordingly, the Trahants have satisfied *none* of the four requirements for mandatory abstention.

### D. The Bankruptcy Court did not abuse its discretion in declining to exercise permissive abstention.

"Abstention is an extraordinary and narrow exception to the duty of a federal court to exercise the jurisdiction conferred and adjudicate a controversy properly before it." *Foster v. Holder (In re Foster)*, Adv. No. 19-04131, 2020 WL 612915, at *18 (Bankr. N.D. Tex. Oct. 15, 2020), *aff'd*, *Foster v. Aurzada (In re Foster)*, No. 22-10310, 2023 WL 20872 (5th Cir. Jan. 3, 2023). "In determining whether permissive abstention and equitable remand are appropriate, the analysis starts with the presumption in favor of exercising jurisdiction over [the] lawsuit and not abstaining in favor of the state court, with the balance heavily weighted in favor of the exercise of jurisdiction." *Doe v. Roman Catholic Church of Archdiocese of New Orleans*, 588 F. Supp. 3d 698, 716–17 (E.D. La. 2022) (quotations and citations omitted). "[B]ankruptcy courts have broad discretion on whether to abstain[.]" *Id.* at 717. In the light of these policies, it cannot be said that the bankruptcy court abused its broad discretion in denying the Trahants' request for equitable remand.

Courts have identified several non-exclusive factors to guide the analysis of permissive abstention. *Foster*, 2020 WL 6127915 at *18 (citing cases). [114] Courts

---

[114] The factors are (1) the effect or lack thereof on the efficient administration of the estate if the court decides to abstain; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficult or unsettled nature of applicable law; (4) the presence of a related proceeding commenced in state court or another nonbankruptcy proceeding; (5) any jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the bankruptcy case; (7) the substance rather than the form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden

also must also be guided by the "equitable considerations germane to that case." *Official Comm. of Unsecured Creditors of Schlotzsky's, Inc. v. Grant Thornton, L.L.P.*, 351 B.R. 430, 434 (Bankr. W.D. Tex. 2006). After reviewing this non-exclusive list in the context of this proceeding, the bankruptcy court found "no cause to abstain from hearing and deciding" the Trahants' claims[115] and cited several compelling reasons justifying its declination to exercise permissive abstention.

> First and foremost, comity favors retention of the case in this Court, given the fact that the Trahants are prohibited by the *Barton* doctrine from prosecuting their claims in state court. Moreover, the resolution of the claims asserted in the State Court Action are wholly dependent upon this Court interpreting its own Orders and the execution of those Orders. *See Burch v. Freedom Mortg. Corp. (In re Burch)*, No. 20-10498, 835 F. App'x 741, 748 (5th Cir. 2021) ("A bankruptcy court maintains 'jurisdiction to interpret and enforce its own prior orders." (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)). Despite the Trahants' endeavor to fashion the State Court Action otherwise, the claims asserted in the State Court Action are "core" claims that do not exist outside of the bankruptcy context; therefore, state law issues do not begin to predominate the bankruptcy issues at stake. No undue burden to this Court's docket will result from retaining jurisdiction over the State Court Action and no evidence of prejudice to any party has been presented to the Court.[116]

Against the backdrop of the Trahants' claims—all of which pertain to conduct of court-approved professionals complying with the court's orders—the bankruptcy

---

of the proceeding on the court's docket; (10) the likelihood that the commencement of the proceeding in the court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; (13) comity; and (14) the possibility of prejudice to other parties in the action. *Foster*, 2020 WL 6127915 at *18.
[115] ROA.67, Memorandum Opinion and Order at 14.
[116] ROA.67-68, Memorandum Opinion and Order at 14–15.

court was well within its discretion in declining to exercise permissive abstention. Accordingly, the bankruptcy court's Remand Order should be affirmed.

## V.   The Bankruptcy Court's Summary Judgment Dismissing the Trahants' claims also was correct.

### A.   The Bankruptcy Court correctly held that the Appellees are entitled to immunity because the Trahants' claims are based on actions taken as an arm of the court and in compliance with a facially valid court order.

The Appellees are entitled to absolute immunity from the Trahants' claims because they were acting in a derivative judicial role at the Court's request and because they acted in compliance with a facially valid court order.[117] Judges are entitled to absolute judicial immunity from suits for money damages for all "judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 F. App'x. 409, 411 (5th Cir. 2009). Derivative absolute judicial immunity provides similar protection to individuals who perform certain functions analogous or adjacent to judicial officers.

Derivative judicial immunity extends absolute immunity to three categories of individuals who perform functions closely associated with the judicial process:

> those who: (1) make discretionary judgments functionally comparable to judges; (2) perform a somewhat different function in the trial process but whose participation is equally indispensable, such as witnesses; or (3) those who act as arms of the court and are an integral part of the judicial process by fulfilling a quasi-judicial role at the court's request.

---

[117] "Louisiana jurisprudence on judicial immunity mirrors the federal doctrine." *Sharp v. Palmisano*, No. 13–5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (quoting *Moore v. Taylor*, 541 So. 2d 378, 381 (La. App. 2 Cir. 1989)); *Palowsky v. Campbell*, 285 So. 3d 466, 469 (La. 6/26/19) (Weimer, J., concurring) (same).

*In re Toppin*, 645 B.R. 773, 784 (E.D. Pa. 2022) (citations, quotations, and modifications omitted). The Appellees fit squarely within the third category.

In determining whether an individual acted as an arm of the court, the analysis focuses on "'the nature of the function performed, not the identity of the actor who performed it.'" *Mays v. Sudderth*, 97 F.3d 107, 110 (5th Cir. 1996) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).[118] Under this functional analysis, when an official is "carrying out [a] court order," that official is "acting as an arm of the court"[119] because the enforcement or execution of a valid judicial order is "intrinsically associated with [the] judicial proceeding" itself. *Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989).

Federal courts uniformly hold that individuals charged with carrying out a facially valid judicial order are entitled to derivative absolute judicial immunity for actions taken in executing that judicial order.[120] The Eleventh Circuit recently

---

[118] *See also Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 318 (W.D. La. 1995) (rejecting "form over substance" under the Supreme Court's "longstanding practice of functional analysis of immunity cases").

[119] *Bush*, 38 F.3d at 847.

[120] *See, e.g.*, *Matter of Ondova Limited Company*, 914 F.3d 990, 994 (5th Cir. 2019) (Chapter 11 trustee and trustee's counsel); *In re Summit Metals, Inc.*, 477 B.R. 484, 501 (D. Del. 2012) (Chapter 11 trustee's counsel and former counsel for unsecured creditors committee); *Tarter v. Hury*, 646 F.2d 1010 (5th Cir. 1981) (court clerks); *Property Management & Invs., Inc. v. Lewis*, 752 F.2d 599, 602–604 (11th Cir. 1985) (receiver of corporation); *Bradford Audio Corp. v. Pious*, 392 F.2d 67, 72–73 (2d Cir. 1968) (court-appointed receiver); *Slotnick v. Garfinkle*, 632 F.2d 163, 166 (1st Cir. 1980) (court clerk and state hospital superintendent); *Patterson v. Von Risen*, 999 F.2d 1235, 1239–41 (9th Cir. 1993) (parole board members and warden), abrogated on other grounds, *Webb v. City of Maplewood*, 889 F.3d 483 (8th Cir. 2018); *Coverdell v. Department of Social and Health Servs.*, 834 F.2d 758, 764 (9th Cir. 1987) (social worker); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238–39 (7th Cir. 1986) (sheriff); *Bush*, 38 F.3d at 847 (probate court administrators); *Trinh v. Fineman*, 9 F.4th 235, 238 (3rd Cir. 2021) (state court-appointed eceivers).

explained the breadth of immunity for trustees and their counsel in actions taken pursuant to their official roles:

> That immunity applies even if a bankruptcy trustee acts in error, maliciously, or in excess of the appointing court's jurisdiction. *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). Plus, it extends to his attorneys. *Chua* [*v. Ekonomou*, 1 F.4th 948, 954 (11th Cir. 2021)]; [*Lawrence v.*] *Goldberg*, [573 F.3d 1265, 1270 (11th Cir. 2009)]. After all, the protection we afford trustees "would be meaningless if it could be avoided by simply suing the Trustee's attorneys." *Chua*, 1 F.4th at 955 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

*In re Juravin*, No. 22-11356, 2024 WL 4677417, at *6 (11th Cir. Nov. 5, 2024) (dismissing the plaintiff's claims based on the trustee and his counsel's immunity).

For example, in *Matter of Ondova Limited Co.*, the Fifth Circuit held that bankruptcy "[t]rustees are entitled to absolute immunity for all actions taken pursuant to a court order" and that such derivative absolute judicial immunity "extends to [a trustee's] attorneys." 914 F.3d at 993–94. There, the plaintiff, a former principal of the debtor, commenced an adversary proceeding alleging state law claims against the trustee and his counsel for alleged actions taken during the receivership process. *Id.* at 994. "All of the Trustee's actions allegedly constituting breach of contract, fraud, or malicious prosecution were committed pursuant to a court order or as part of the Trustee's official duties." *In re Ondova Limited Co.*, No. 14-3121, 2018 WL 580151, at *2 (N.D. Tex. Jan. 26, 2018). Because the trustee "was acting 'under the supervision and subject to the order of the bankruptcy judge,'" both the trustee and his counsel were entitled to absolute immunity. *Matter of Ondova*,

914 F.3d at 993 (quoting *Boullion v. McClanahan*, 639 F.2d 213, 214 (5th Cir. 1981)).[121]

As discussed above, Jones Walker and Mr. Mintz are court-approved counsel for the Archdiocese, and DRC is its court-approved claims and noticing agent for the Chapter 11 Case. Under Section 1107(a) of the Bankruptcy Code, as a debtor-in-possession, the Archdiocese has the rights, powers, and duties of a trustee, who is generally entitled to derivative absolute judicial immunity for "acting under the supervision and subject to the orders of the bankruptcy judge." *Boullion*, 639 F.2d at 214. Trustees, their counsel, and other court-approved individuals are entitled to derivative absolute judicial immunity for acting under a judicial order. *See, e.g.*, *In re Summit Metals, Inc.*, 477 B.R. at 501; *In re Juravin*, 2024 WL 4677417 at *6. Under the Supreme Court's function-over-form analysis for determining whether an individual is entitled to absolute immunity, the Appellees are entitled to immunity for their actions in serving the Trahant Order given "the nature of the responsibilities" granted to them under the Bankruptcy Code and under the supervision of the court, regardless of their "'rank or title.'" *Brown v. Griesenauer*, 970 F.2d 431, 436 (8th Cir. 1992) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985).[122] Such immunity is critical because the Appellees, as court-approved

---

[121] *See also In re Summit Metals, Inc.*, 477 B.R. at 501 (finding that because the plaintiff's complaint consisted "almost entirely of claims stemming from official, Court-approved or Court-ordered actions," the defendants, including the trustee's court-approved counsel, were entitled to immunity).

[122] *See also Boullion*, 639 F.2d at 214 ("In the instant case the court-appointed trustee was acting under the supervision and subject to the orders of the bankruptcy judge. We hold that since [the trustee], as an arm of the Court, sought and obtained court approval of his actions, he is entitled to derived immunity.").

officers, have been charged with "performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).

Derivative absolute judicial immunity is "obvious" in this case because the Appellees were acting pursuant to a "direct judicial order." *See Roland v. Phillips*, 19 F.3d 552, 556 n.4 (11th Cir. 1994) ("When an official acts pursuant to a direct judicial order, absolute quasi-judicial immunity is obvious."). Immunity for those who comply with a court's order is necessary to maintain the authority of the court:

> [O]fficials must be permitted to rely upon a judge's findings and determinations to preserve the integrity of the court's authority and ability to function. It does not seem logical to grant immunity to a judge in making a judicial determination and then hold the official enforcing or relying on that determination liable for failing to question the judge's findings. This would result in the official second-guessing the judge who is primarily responsible for interpreting and applying the law.

*Bush*, 38 F.3d at 848. This immunity enables "[t]he fearless and unhesitating execution of court orders[, which] is essential if the court's authority and ability to function are to remain uncompromised." *Coverdell*, 834 F.2d at 765. Without such protection, individuals charged with carrying out a facially valid court order are left with an untenable Catch-22: "They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court." *Valdez*, 878 F.2d at 1289.

The Trahants' implicit suggestion that the Appellees should have disobeyed the service instructions in the Trahant Order and later clarification from the bankruptcy court highlights the need for derivative absolute judicial immunity in

lawsuits such as this one. To allow the Trahants' claims to proceed against the Appellees would encourage the "second-guessing [of] the judge who is primarily responsible for interpreting and applying the law." *Bush*, 38 F.3d at 848. Further, "because judges are absolutely immune from suit for judicial actions taken pursuant to their jurisdiction, to deny similar protection to government officials executing their orders would render the officials lightning rods for harassing litigation aimed at judicial orders." *Mays*, 97 F.3d at 112–13 (quotation and modification omitted).

The Trahants attempt to avoid the Appellees' immunity by arguing that the bankruptcy court's judgment "simply got it wrong."[123] This argument is meritless and is not supported by the record. The bankruptcy court, interpreting its own orders and reviewing the transcript of a hearing over which it presided, stated:

> At that [June 13, 2022] hearing, the Court stated its intention, as instructed in the text of the June 7, 2022 Order [the Trahant Order], for the Order [to] be served on the entire Mailing Matrix and that service not be limited to the Limit-Notice Order. The Court explained that its findings contained in the Order broadly affected the Committee's constituency and other parties' interests in the case and, therefore, the [Trahant Order] warranted service to the entire Mailing Matrix.[124]

The Trahants cannot explain how this statement is false, as the Trahant Order, itself, instructed "counsel for the Debtor" to "serve this Order . . . on those parties in interest who will not receive service via this Court's CM/ECF system."[125] Indeed, this fact was confirmed by the bankruptcy court's law clerk: "Please serve the Order on all parties in interest who will not receive service via the CM/ECF system. Do

---

[123] Appellants' Br. at 48.
[124] ROA.2456, Memorandum Opinion and Order at 13 (citing ROA.2256, Transcript of Proceedings).
[125] ROA.2249, Trahant Order at 5.

not limit it to the parties identified in the Special Notice List."[126] The bankruptcy court further expressly confirmed during the June 13, 2022 hearing that service should be effected on "the whole matrix"[127] to reach the entire "constituency . . . despite the limit notice."[128] The district court independently reached the same conclusion "based on record evidence."[129] The Appellees, as court-approved professionals for the Debtor and acting as an arm of the Court, complied with the Court's direct orders and are, therefore, entitled to immunity.[130]

The Trahants' additional legal and factual arguments about the meaning of the phrase "party in interest" simply are not relevant to the immunity analysis and underscore that this suit in part seeks to re-litigate the composition of the Mailing Matrix. Local Rule 1007-2 definitively provides that the Mailing Matrix identifies the "address of all known creditors and other parties in interest" for purposes of service. Whether a particular individual's name should or should not have been placed on the list at the start of the case is of no moment. The Appellees were ordered to serve the Mailing Matrix, and that is what they did.

Finally, the Trahants did not object to the admissibility of the Appellees' summary judgment evidence or their reliance on the record from the Chapter 11 Case. The closest they came to a potential objection is a confusing comment that

---

[126] ROA.2250, Email from Chambers to Ms. Oppenheim (June 8, 2022, 9:49 A.M.).

[127] ROA.2268-69, Transcript at 13:24–14:3 (June 13, 2022).

[128] ROA.2269-70, *id.* at 14:22–15:9.

[129] ROA.557, Opinion at 26 n.98.

[130] The Trahants also mistakenly assert that the bankruptcy court's immunity determination was based on Texas law. Appellants' Br. at 50. Though the Fifth Circuit in *Ondova* granted summary judgment "under the *separate* doctrine of attorney immunity" under Texas law, its holding was that "immunity extends to Trustee Sherman's attorneys under . . . a derivative theory of judicial immunity." *Ondova*, 914 F.3d at 994 (emphasis added).

they make again on appeal that "the [law clerk] email is verified only by the declaration of Brandon Naquin, whose identity in relation to this case and means of personal knowledge with the email is not provided."[131] However, summary judgment evidence need not be verified to be considered by the bankruptcy court. A party does "not need to produce an admissible form of [evidence] to overcome summary judgment. It is enough that the evidence can be made admissible for trial."[132] *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 299 n.4 (5th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).[133] Even assuming that the Trahants intended to raise some sort of objection to the emails attached to the Appellees' motion, that objection would have failed because emails "can be made admissible for trial." *Id.*

In complex bankruptcy cases, courts need to rely on actors like the trustee, the debtor-in-possession, and the designated service agent to help them ensure notice requirements are met and the case proceeds efficiently. This lawsuit presents the same type of "harassing litigation aimed at judicial orders" that derivative absolute judicial immunity is intended to prevent. *Mays*, 97 F.3d at 112–13.[134]

---

[131] Appellants' Br. at 59.

[132] *See* ROA.559, Opinion at 28 n.105 ("Federal Rule of Civil Procedure 56 does not require summary-judgment evidence be produced in admissible form. 'It is enough that the evidence can be made admissible for trial.'") (quoting *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 299 n.4 (5th Cir. 2021)).

[133] *See* ROA.559, Opinion at 28 n.105 ("Federal Rule of Civil Procedure 56 does not require summary-judgment evidence be produced in admissible form. 'It is enough that the evidence can be made admissible for trial.'") (quoting *Poincon*, 9 F.4th at 299 n.4).

[134] *See Baton Rouge Ventures, LLC v. Cedar Grove Cap., LLC*, No. CV 20-628-JWD-EWD, 2022 WL 4474158, at *7 n.12 (M.D. La. Sept. 26, 2022) (citing cases and discussing various mechanisms by which emails can be authenticated at trial, including by individuals who participated in the email communications and by individuals who did not participate in them but have sufficient familiarity for authentication purposes).

**B.      The Appellees' Motion for Summary Judgment was not premature, as the discovery requested could not change the result.**

Rule 56(d) of the Federal Rules of Civil Procedure allows a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." However, a party relying on Rule 56(d)

> "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." . . . Instead, the non-moving party must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."

*MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (quoting *Am. Family Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). When plaintiffs seek discovery under Rule 56(d) "to disprove the applicability of an immunity-derived bar to suit" they bear a "heavy burden" because "immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016).

The Trahants' reliance on the Rule 56(d) declaration of their counsel fails as a matter of law. Their primary argument is that no discovery has taken place.[135] The Fifth Circuit has confirmed repeatedly, however, that "Rule 56 does not require that *any* discovery take place before summary judgment can be granted." *MDK Sociedad De Responsabilidad Limitada*, 25 F.4th at 366 (quoting *Mendez*, 823 F.3d at 336). Further, a nonmovant's entitlement to discovery prior to a ruling on summary

---

[135] Appellants' Br. at 51–52.

judgment is limited and may be cut off if "the record shows that the requested discovery is not likely to produce facts needed by plaintiff to withstand" the motion. *Paul Kadair, Inc. v. Sony Corp. of America*, 694 F.2d 1017, 1030 (5th Cir. 1983).

The Trahants failed to specify any additional discovery that was *necessary* to oppose to the motion. As discussed above, the bankruptcy court held that the Appellees are entitled to absolute derivative absolute judicial immunity for actions taken as arms of the Court. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "Indeed, this is exactly why allegations of bad faith or malice do not suffice—such allegations 'ordinarily cannot be resolved without engaging in discovery and eventual trial.'" *Jones v. King*, 701 F. Supp. 3d 552, 562 (W.D. Tex. 2023) (quoting *Mireles*, 502 U.S. at 11), *rev'd on other grounds*, *Jones v. King*, 148 F.4th 296 (5th Cir. 2025). Therefore, any discovery into the contents of the Mailing Matrix, the dates when the Trahant Order was sent to each person on the Mailing Matrix, and receipt of notice of the alleged overbreadth of service[136] would not change this result, as none of these facts are relevant or material to their claim that the Matrix should not have been used for service of the Trahant Order at all.

The bankruptcy court did not abuse its discretion in denying the Trahants' request for additional discovery under Rule 56(d).

## CONCLUSION

For these reasons, the district court's judgment affirming the bankruptcy court's orders denying Trahants' motion to recuse the bankruptcy judge, denying

---

[136] ROA.2327 ¶ 4 (Declaration of Jack E. Truitt).

Trahants' motion for remand, and granting summary judgment in favor of the Appellees should be affirmed. The district court's orders referring this lawsuit to the bankruptcy court and declining to recuse the bankruptcy also should be affirmed.

Respectfully submitted,

 /s/ Richard C. Stanley
Richard C. Stanley, La. Bar No. 8487
Kathryn W. Munson, La. Bar No. 35933
Brandon A. Naquin, La. Bar No. 39998
STANLEY REUTER ALFORD
  OWEN MUNSON & PAUL, LLC
909 Poydras Street, Suite 2500
New Orleans, LA 70112
(504) 523-1580
rcs@stanleyreuter.com
kwm@stanleyreuter.com
ban@stanleyreuter.com

*Counsel for Mark A. Mintz,*
*Jones Walker LLP, and*
*Donlin Recano & Company, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of September, 2025, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

*/s/ Richard C. Stanley*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because it contains 15,284 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Richard C. Stanley*

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with ESET Endpoint Antivirus and is free of viruses.

*/s/ Richard C. Stanley*